## LOEB v. COLUMBIA TOWNSHIP TRUSTEES.

### ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

No. 42. Argued April 27, 1900.—Decided December 10, 1900.

In a case brought here from a Circuit Court, the opinion regularly filed below, and which has been annexed to and transmitted with the record, may be examined in order to ascertain, in cases like this, whether either party claimed that a state statute upon which the judgment necessarily depended, in whole or in part was in contravention of the Constitution of the United States; but this must not be understood as saying that the opinion below may be examined in order to ascertain that which, under proper practice, should be made to appear in a bill of exceptions, or by an agreed statement of facts, or by the pleadings.

If a claim is made in the Circuit Court that a state law is invalid under the Constitution of the United States, this court may review the judgment at the instance of the unsuccessful party.

As the bonds in suit in this case were executed by the defendant township, a corporation, and are payable to bearer, the present holder, being a citizen of a State different from that of which the township was a corporation, was entitled to sue upon them, without reference to the citizenship of any prior holder.

The Circuit Court erred in holding that the petition in this case made a case that brought it within the decision in *Norwood* v. *Baker*, 172 U. S. 269.

Even if the third section of the statute in question be stricken out, the petition makes a case entitling the plaintiff to a judgment against the township.

The contention that, independently of any question of Federal law, the statute of Ohio under which the bonds were issued was in violation of the constitution of that State in that, when requiring the defendant township to widen and extend the avenue in question the legislature exercised administrative, not legislative, powers, is not supported by the decisions of the Supreme Court of Ohio made prior to the issuing of these bonds.

THE case is stated in the opinion of the court.

*Mr. C. Hammond Avery* for plaintiff in error. *Mr. J. W. Warrington* and *Mr. H. D. Peck* were on his brief.

*Mr. Wallace Burch* for defendants in error. *Mr. Simeon M. Johnson* and *Mr. Oliver G. Bailey* were on his brief.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action was brought in the court below by Loeb, a citizen of Indiana, against the Trustees of Columbia Township in Hamilton County, Ohio.

The petition was demurred to upon the ground that it did not state facts sufficient to constitute a cause of action against the township. After argument the demurrer was sustained and, the plaintiff electing not to plead further, judgment was rendered for the defendant.

The suit is upon bonds issued by the township for the purpose of raising money to meet the cost of widening and extending a certain avenue within its limits.

The questions to be considered relate to the jurisdiction of this court, the validity under the Constitution of the United States of an act of the General Assembly of Ohio in virtue of which the bonds in suit were issued, and the applicability in this case of certain decisions of the Supreme Court of the State rendered after such bonds were executed and delivered.

The pleadings and orders of court make the following case:

The petition alleged that on April 27, 1893, the General Assembly of Ohio passed an act by the first section of which the trustees of that township were authorized and *required* to widen and extend Williams avenue between certain points named and to appropriate and enter upon and hold any real estate within the township necessary for such purpose;

That by the second section of the act the township trustees were directed to "immediately make application to the probate court of the county as provided in section 2236 of the Revised Statutes of Ohio, and thereafter, as far as practicable, the proceedings shall conform to and be had under the provisions of sections 2236 to 2261, inclusive, of the Revised Statutes of Ohio;" and,

That by the fourth section it was provided that "for the purpose of raising money necessary to meet the expense of the improvement, the trustees of said township are hereby authorized and *directed* to issue the bonds of the township, payable in instalments or at intervals not exceeding in all the period of

six years, bearing interest at the rate of six per cent per annum, which bonds shall not be sold for less than their par value." 90 Ohio Local Laws, 251.

The petition did not set out the third section of the act. But as it was the duty of the Circuit Court to take notice of its provisions, and as it must be referred to in order to dispose of the questions arising on this record, it is here given in full:

" The trustees shall receive reasonable compensation for their services, which shall not exceed the sum of twenty-five dollars each, which, with all costs and expense of constructing said improvement, together with the interest on any bonds issued by the trustees for the same, shall be levied and assessed upon *each front foot of the lots and lands abutting on each side of said Williams avenue between the termini mentioned in section one hereof,* and shall be a lien from the date of the assessment upon the respective lots or parcels of lands assessed ; said assessment shall be payable in five annual payments, and shall be paid to the township treasurer ; and the option of paying his portion of such assessment in full within a period of twenty days from the date of the levy thereof shall be given to each of the property owners, but no notice to the property owners of such option shall be necessary. The township treasurer shall, on or before the second Monday of September, annually, certify all unpaid assessments to the county auditor, and the same shall be placed on the tax list, and shall be, with ten per cent penalty to cover interest and cost of collection, collected by the county treasurer in the same manner as other taxes are collected, and when collected he shall pay the same to the township treasurer ; and all moneys received by the township treasurer on such assessments shall be applied to the payment of the bonds issued under this act, and for no other purpose ; and for the purpose of enforcing the collection of the assessments so certified to him, the county treasurer shall have the same power and authority now allowed by law for the collection of state and county taxes." 90 Ohio Local Laws, 251.

It further appears from the petition that the township trustees appropriated land for the avenue in the manner provided in the act ; and that for the purpose of raising the money necessary to

meet the expense of the appropriation the trustees, on or about September 29, 1894, duly executed and issued, in proper form and in accordance with the terms and provisions of the act, twenty-five bonds of Columbia Township of $500 each, five payable respectively in one, two, three, four and five years each, and one for $432 payable one year from date, all of the above date, and numbered consecutively from one to twenty-six inclusive, and all payable to the order of the bearer, at the office of the treasurer of the county, and bearing interest represented by coupons attached, at the rate of six per cent per annum, payable semi-annually, on the 29th days of March and September of each year; that on or about September, 1894, the bonds were sold by the township to a *bona fide* purchaser and the highest bidder for $13,325 and accrued interest; that on or about September 29, 1895, the trustees paid bonds Nos. 1, 2, 3, 4 and 5, then due, each for $500, and No. 26 for $432, and the interest coupons payable on the date last named on the entire issue of the twenty-six bonds; and that on March 29, 1896, the trustees paid the interest coupons, due on that day, on the twenty bonds remaining unpaid, including bonds numbered 6, 7, 8, 9 and 10.

The petition set out each of the bonds last named, and alleged that the plaintiff was the *bona fide* owner and holder for value of each of them, and had demanded payment of each in accordance with its terms, but that payment was refused.

The bonds, dated September 29, 1894, were signed by the trustees and attested by the seal of the township, and were alike in form. Each recited that it was "one of a series of 25 bonds of $500 each, issued by virtue of an act of the General Assembly of the State of Ohio, passed April 27, 1893, authorizing the trustees of Columbia Township to levy an assessment on the real estate abutting on the Williams avenue between Duck Creek road and Madison pike, and one bond for four hundred and thirty-two dollars, for the payment of twelve thousand nine hundred and thirty-two dollars, for widening and extending said avenue;" and that "by virtue of said act, the Trustees of Columbia Township hereby acknowledge said township indebted to the bearer in the sum of five hundred dol-

lars, which sum they, as trustees, and for their successors in office, promise to pay to the bearer hereof, upon the surrender of this bond, at the office of the treasurer of said township, on the 29th day of September, 1896, and also interest thereon at the rate of six per cent, per annum, payable semi-annually, on the 29th days of March and September of each year, during the continuance of this loan, on presentation to the township treasurer of the respective coupons hereto attached."

A judgment was asked for the amount of bonds 6 to 10 inclusive, with the interest thereon.

The record contains in full the opinion rendered and filed by the court when disposing of the demurrer. 91 Fed. Rep. 37. In that opinion it is expressly stated that the following points were made in argument in support of the demurrer:

1. That the petition did not show that the plaintiff was the original holder of the bonds sued on, and if he were an assignee or subsequent holder thereof he was not entitled to maintain the action, because the bonds were payable to bearer, and were not made by a corporation.

2. That act of the General Assembly, under and by virtue of which the bonds were issued, was in violation of the constitution of the State, and therefore the bonds were invalid.

3. That the act contravened the provisions of the Constitution of the United States, and therefore the bonds were invalid.

It appears from the opinion of the Circuit Court that the first and second of these points were ruled in favor of the plaintiff. But the third point was decided for the defendant, the court being of opinion that according to the principles laid down in *Norwood* v. *Baker*, 172 U. S. 269, the law under which the bonds sued on were issued was repugnant to that clause of the Fourteenth Amendment of the Constitution of the United States forbidding a State to deprive any person of property without due process of law. In disposing of the third point the court referred to the propositions made in its support as having been " claimed " by the township.

I. The first question to be considered is one of the jurisdiction of this court to proceed upon writ of error directly to the Circuit Court.

By the fifth section of the Circuit Court of Appeals Act of March 3, 1891, appeals or writs of error may be prosecuted to this court from the Circuit Courts "*in any case* in which the constitution or law of a State is *claimed* to be in contravention of the Constitution of the United States." 26 Stat. 826, 827–8, c. 517.

The petition shows that the parties are citizens of different States. It states no other ground of Federal jurisdiction. If nothing more appeared bearing upon the question of jurisdiction, then it would be held that this court was without authority to review the judgment of the Circuit Court.

Is not this court, however, sufficiently informed by the record that the defendant township, under its general demurrer, "claimed" in the Circuit Court that the statute of Ohio by the authority of which the bonds were issued was in contravention of the Constitution of the United States?

It is said that even if the record shows such a claim to have been made it will not avail the plaintiff; for, it is argued, when the jurisdiction of the Circuit Court is invoked by the plaintiff only on the ground of diverse citizenship, a claim by the *defendant* of the repugnancy of a state law to the Constitution of the United States is not sufficient to give this court jurisdiction, upon writ of error, to review the final judgment of the Circuit Court sustaining such claim. Such an interpretation of the fifth section is not justified by its words. Our right of review by the express words of the statute extends to " any case " of the kind specified in the fifth section. And the statute does not in terms exclude a case in which the Federal question therein was raised by the defendant. That section differs from section 709 of the Revised Statutes relating to the review by this court of the final judgment of the highest court of a State in this, that under the latter section we can review the final judgment of the state court upon writ of error sued out by the party who is denied a right, privilege or immunity specially set up or claimed *by him* under the Constitution or laws of the United States; whereas the Circuit Court of Appeals Act does not declare that the final judgment of a Circuit Court in a case in which there was a claim of the repugnancy of a state statute to the Consti-

tution of the United States may be reviewed here only upon writ of error sued out by the party making the claim. In other words, if a claim is made in the Circuit Court, no matter by which party, that a state enactment is invalid under the Constitution of the United States, and that claim is sustained or rejected, then it is consistent with the words of the act, and, we think, in harmony with its object, that this court review the judgment at the instance of the unsuccessful party, whether plaintiff or defendant.

It was the purpose of Congress to give opportunity to an unsuccessful litigant to come to this court directly from the Circuit Court in every case in which a claim is made that a state law is in contravention of the Constitution of the United States. If the Circuit Court had adjudged in this case that the township's claim of unconstitutionality was without merit and had given judgment for the plaintiff, can it be doubted for a moment that the township could have brought the case here directly from the Circuit Court upon writ of error? But if the township, upon a denial of its claim, could invoke our jurisdiction, as of right, upon what principle can the plaintiff be denied the like privilege if the state law upon which his action depended was, upon his adversary's claim, stricken down as void under the Constitution of the United States? Can the case, so far as the township is concerned, be regarded as belonging to the class which the act of Congress brings directly within the cognizance of this court, and yet not be regarded as a case of that class with respect to the plaintiff? The answer to these questions has already been indicated.

It is true that the plaintiff might have carried this case to the Circuit Court of Appeals, and a final judgment having been rendered in that court upon his writ of error, he could not thereafter have invoked the jurisdiction of this court upon another writ of error to review the judgment of the Circuit Court; for, as said in *Robinson* v. *Caldwell*, 165 U. S. 359, 362, "it was not the purpose of the judiciary act of 1891 to give a party who was defeated in a Circuit Court of the United States the right to have the case finally determined upon its merits both in this court and in the Circuit Court of Appeals," although the latter

court, before disposing of a case which might have been brought here directly from the Circuit Court, may certify to this court questions or propositions as indicated in the sixth section of the above act. But the plaintiff was not bound to go to the Circuit Court of Appeals, and thereby cut himself off from the right to have this court declare whether the Circuit Court erred in holding that the state law upon which he relied for judgment was repugnant to the Constitution of the United States.

Cases in this court are cited which hold that where the plaintiff invokes the jurisdiction of the Circuit Court solely upon the ground of diverse citizenship, and where the claim of the invalidity of a state statute under the Constitution of the United States came from the defendant or arose after the filing of the petition or during the progress of the suit, then the judgment of the Circuit Court of Appeals is final within the meaning of the sixth section of the act of 1891, 26 Stat. 826, 828, c. 517, declaring that "the judgments or decrees of the Circuit Courts of Appeals shall be final in all cases in which the jurisdiction is dependent entirely upon the opposite parties to the suit or controversy being aliens and citizens of the United States or citizens of different States." *Colorado Central Consolidation Mining Co.* v. *Turck*, 150 U. S. 138; *Borgmeyer* v. *Idler*, 159 U. S. 408, 414; *Ex parte Jones*, 164 U. S. 691, 693.

When the question is whether a judgment of the Circuit Court of Appeals is final in a particular case, it may well be that the jurisdiction of the Circuit Court is, within the meaning of that section, to be regarded as dependent entirely upon the diverse citizenship of the parties if the plaintiff invoked the authority of that court only upon that ground; because in such case the jurisdiction of the court needed no support from the averments of the answer, but attached and became complete upon the allegations of the petition. But no such test of the jurisdiction of this court to review the final judgment of the Circuit Court is prescribed by the fifth section. Our jurisdiction depends only on the inquiry whether that judgment was in a case in which it was claimed that a state law was repugnant to the Constitution of the United States. In the present case the Circuit Court, upon the claim of one of the parties,

applied the Constitution to the case, and put the plaintiff out of court. *Cornell* v. *Green*, 163 U. S. 75. Any other interpretation of the statute is inconsistent with the equal right of the plaintiff with the defendant to come here, if unsuccessful, in a case embraced by the fifth section. Here the plaintiff could not have raised in his petition any question of a Federal right. He sued on the bonds held by him, and sought only a judgment for money. His cause of action was not Federal in its nature. He therefore could not have invoked the jurisdiction of the Circuit Court upon any ground except that of diverse citizenship. He could not have added to or enforced jurisdiction by anticipating the defence and alleging in his petition that the defendant township would in its answer claim that the state statute in question was in contravention of the Constitution of the United States; for that would have been matter of defence, and the allegation could, on motion, have been properly stricken from the petition. Nevertheless, the case is one in which there was a claim that a state law was repugnant to the Constitution of the United States.

The views expressed by us as to the scope of the act of 1891 are supported by *Holder* v. *Aultman*, 169 U. S. 81, 88. That was an action in the Circuit Court of the United States for the Eastern District of Michigan upon a written contract relating to agricultural machines, the plaintiff being a corporation of Ohio, and the defendant a corporation of Michigan. No question of a Federal nature appeared in the plaintiff's petition. The defendant, however, claimed that a certain statute of Michigan stood in the way of the plaintiff maintaining its action. This court said : " The Circuit Court, in giving judgment for the plaintiff, held that the contract was made in the State of Ohio, and that the statute of Michigan, so far as it applied to the business carried on by the plaintiff in that State under the contract, was in conflict with the Constitution of the United States authorizing Congress to regulate interstate commerce. 68 Fed. Rep. 467. This was therefore a ' case in which the constitution or law of a State is claimed to be in contravention of the Constitution of the United States,' and was rightly brought directly to this court by writ of error under the act of March 3,

1891, c. 517, § 5, 26 Stat. 828.   Upon such writ of error, differing in those respects from a writ of error to the highest court of a State, the jurisdiction of this court does not depend upon the question whether the right claimed under the Constitution of the United States has been upheld or denied in the court below; and the jurisdiction of this court is not limited to the constitutional question, but includes the whole case.   *Whitten* v. *Tomlinson*, 160 U. S. 231, 238; *Penn. Ins. Co.* v. *Austin*, 168 U. S. 685."

This brings us to the inquiry whether it can be assumed from the present record that a claim was made in the Circuit Court that the statute of the State under the authority of which the bonds in suit were issued was invalid under the Constitution of the United States.   There can be but one answer to this question, if we may look to the opinion filed by the Circuit Court when it disposed of the demurrer.   Although the demurrer was general in its nature, it referred to the petition and its allegations, and thus brought to the attention of the court the state enactment under which the bonds were issued; and it was certainly competent for the township to claim at the hearing of the demurrer that such enactment upon its face was repugnant to the Constitution of the United States and therefore void.   Turning to the opinion of the Circuit Court, made part of the transcript, we find it expressly stated therein not only that such a claim was made by the township on the hearing of the demurrer, but that the judgment sustaining the demurrer and dismissing the petition was placed upon the sole ground that the claim that the state law contravened the Constitution of the United States was well made.

Is the opinion of the Circuit Court of no value to us when considering this case?   May we not look to it for the purpose of ascertaining whether it was claimed that the state law contravened the Constitution of the United States?   It is said that we cannot, and that view is supposed to be sustained by *England* v. *Gebhardt*, (1884) 112 U. S. 502, 505, 506, which was a writ of error to review a judgment of a Circuit Court remanding to the state court a case removed therefrom under section five of the act of March 3, 1875, c. 137, 18 Stat. 472.   In the

petition for removal in that case it was averred that the parties to the suit were citizens of different States, and it was stated generally in the order remanding the case that there was a finding of the court that they were not. That finding was, of course, based upon facts brought to the attention of the court in the proper form. But the facts bearing upon the question of divers citizenship did not appear in a bill of exceptions, nor in an agreed statement of facts, nor in a special finding in the nature of a special verdict, nor in any other proper or appropriate mode. It, however, did appear from the record that certain affidavits copied into the transcript had been filed in the case. This court held that the affidavits formed no part of the record, saying: " The mere fact that a paper is found among the files in a cause does not of itself make it a part of the record. If not a part of the pleadings or process in the cause, it must be put into the record by some action of the court. *Sargeant* v. *State Bank of Indiana,* 12 How. 371, 384; *Fisher* v. *Cockerell,* 5 Pet. 248, 254. This must be done by a bill of exceptions, or something which is equivalent. Here, however, that has not been done." The opinion thus concluded: " Neither is the opinion of the court a part of the record. Our Rule 8,[1] section 2, requires a copy of any opinion that is filed in a cause to be annexed to and transmitted with the record, on a writ of error or an appeal to this court, but that of itself does not make it a part of the record below." That language is not to be taken too broadly or without reference to the particular case then before the court. What was said may undoubtedly be taken as an adjudication that the opinion of the court cannot, under our rule, be referred to for the purpose of ascertaining the evidence or the facts

---

[1] 8.

WRIT OF ERROR, RETURN AND RECORD.

1. The clerk of the court to which any writ of error may be directed shall make return of the same, by transmitting a true copy of the record, and of the assignment of errors, and of all proceedings in the case, under his hand and the seal of the court.

2. In all cases brought to this court, by writ of error or appeal, to review any judgment or decree, the clerk of the court by which said judgment or decree was rendered shall annex to and transmit with the record a copy of the opinion or opinions filed in the case.

found below upon which the judgment was based; but not as precluding this court from looking into the opinion of the trial court for any purpose whatever, as for instance for the purpose of ascertaining whether either party claimed, in proper form, that a state law, upon which some of the issues depended, was in contravention of the Constitution of the United States. The principal if not the only object of requiring the opinion to be annexed to and transmitted to this court was that we might be informed of the grounds upon which the court below proceeded. Unless the rule had at least that object, why should it have been adopted?

In *United States* v. *Taylor*, 147 U. S. 695, 700, which came from a Circuit Court of the United States, this court said : " It was formerly held that, even in writs of error to a state court, the opinion of the court below was not a part of the record, *Williams* v. *Norris*, 12 Wheat. 117, 119; *Rector* v. *Ashley*, 6 Wall. 142; *Gibson* v. *Chouteau*, 8 Wall. 314; but the inconvenience of this rule became so great that it was subsequently changed, *Murdock* v. *Memphis*, 20 Wall. 590, and, finally, the eighth rule of this court was so modified, in 1873, as to require a copy of the opinion to be incorporated in the transcript."

In *Sayward* v. *Denny*, 158 U. S. 180, 181, in which the question was whether it sufficiently appeared from the record that the state court had denied any Federal right or immunity specially set up or claimed by the party who invoked our jurisdiction, the Chief Justice observed that certain propositions must be regarded as settled—one of which was that the arguments of counsel formed no part of the record, " though the opinions of the state courts are now made such by rule "—citing, among other cases, *United States* v. *Taylor*, above referred to.

The rule of our court referred to does not apply alone to cases brought here from the highest court of a State. It applies, in terms, to all cases brought to this court by writ of error or appeal. What therefore was said in the above cases as to the object and effect of the rule applies to records from a Circuit Court of the United States.

Some light is thrown upon this question by the decisions in cases from the highest courts of the States. In *Murdock* v.

*Memphis,* 20 Wall. 590, 633, it was said that in determining
whether a Federal question was actually raised and decided in
the state court, "this court has been inclined to restrict its in-
quiries too much by this express limitation of the inquiry ' to
the face of the record.' What was the record of a case was
pretty well understood as a common-law phrase at the time that
statute [act of 1789] was enacted. But the statutes of the State
and new modes of proceedings in those courts have changed and
confused the matter very much since that time." After observing
that it was in reference to one of the necessities thus brought
about that this court had long since determined to consider as part
of the record the opinions delivered in such cases by the Supreme
Court of Louisiana, it was said : " And though we have repeat-
edly decided that the opinions of other state courts cannot be
looked into to ascertain what was decided, we see no reason
why, since this restriction is removed, we should not so far ex-
amine those opinions, when properly authenticated, as may be
useful in determining that question."

The subject was again considered in *Gross* v. *United States
Mortgage Co.,* 108 U. S. 477, 486, which came from the Supreme
Court of Illinois. After referring to what was said in *Murdock*
v. *City of Memphis,* this court said : " We cannot, therefore,
doubt that in the existing state of the law it is our duty to
examine the opinion of the Supreme Court of Illinois, in con-
nection with other portions of the record, for the purpose of
ascertaining whether this writ of error properly raises any
question determined by the state court adversely to a right,
title, or immunity under the Constitution or laws of the United
States and specially set up and claimed by the party bringing
the writ." It is true that in that case the court stated that
any difficulty upon the subject was removed by the statutes of
Illinois regulating that subject; but the decision was not placed
upon that ground.

It has long been the practice of this court in cases coming
from a state court to refer to its opinion made part of the record
for the purpose of ascertaining whether any Federal right,
specially set up or claimed, had been denied to the plaintiff in
error, or whether the judgment rested upon any ground of

local law sufficient to dispose of the case without reference to any question of a Federal character. And we have done this without stopping to inquire whether there was any statute of the State requiring the opinion of the court to be filed in the case as part of the record.

For the reasons we have given it must be held that in a case brought here from a Circuit Court the opinion regularly filed below, and which has been annexed to and transmitted with the record, may be examined in order to ascertain, in cases like this, whether either party claimed that a state statute upon which the judgment necessarily depended, in whole or in part, was in contravention of the Constitution of the United States. By this however we must not be understood as saying that the opinion below may be examined in order to ascertain that which under proper practice should be made to appear in a bill of exceptions, or by an agreed statement of facts, or by the pleadings.

The result is that this court has jurisdiction to review the judgment of the Circuit Court, and to determine every question properly arising in the case. We may therefore determine whether the court below erred in sustaining the demurrer to the petition.

II. One of the questions arising upon the record is whether the defendant township is a corporation within the meaning of that clause of the Judiciary Act of August 13, 1888, c. 866, 25 Stat. 433, 434, § 1; which excludes from the cognizance of a Circuit or District Court of the United States "any suit, except upon foreign bills of exchange, to recover the contents of any promissory note or other chose in action in favor of any assignee, or of any subsequent holder, if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made." This question affects the jurisdiction of the Circuit Court to take cognizance of this case.

When the act of 1888 was passed it was the established law that a municipal corporation created under the laws of a State with power to sue and be sued and to incur obligations was to

be deemed a citizen of that State for purposes of suit by or against it in the courts of the United States. In *Cowles* v. *Mercer County*, 7 Wall. 118, 122, this court said : " It is enough for this case that we find the Board of Supervisors [of the county] to be a corporation authorized to contract for the county. The power to contract with citizens of other States implies liability to suit by citizens of other States, and no statute limitation of suability can defeat a jurisdiction given by the Constitution." *Lincoln County* v. *Luning*, 133 U. S. 529, 531 ; *McCoy* v. *Washington Co.*, 3 Wall. Jr. C. C. R. 381, 384 ; Dillon's Removal of Causes, § 105. We perceive nothing in that act indicating any purpose of Congress to exclude from the jurisdiction of the Circuit Courts of the United States suits by or against municipal corporations having authority by the laws creating them to sue or to incur liabilities in their corporate name. It must therefore be taken that the words " any corporation " in the act of 1888 include municipal as well as private corporations. And it is the settled law of Ohio that a township is suable on account of any liabilities incurred by it. *Harding* v. *Trustees of New Haven Township*, 3 Ohio, 227 ; *Trustees of Concord Township* v. *Miller*, 5 Ohio, 184 ; *Wilson* v. *Trustees of No. 16*, 8 Ohio, 174. Now by the statutes of Ohio the defendant township was constituted a body politic and corporate for the purpose of enjoying and exercising the rights and privileges conferred upon it by law, and was made capable of suing and being sued, pleading and being impleaded. 1 Bates' Anno. Stat. Ohio, § 1376. It was created for purposes of local administration, and is a corporation. *Fairfield Township* v. *Ladd*, 26 Ohio St. 210, 213 ; *Lane* v. *State*, 39 Ohio St. 312. As therefore the bonds in suit were executed by the defendant township, a corporation, and are payable to bearer, the present holder, being a citizen of a State different from that of which the township was a corporation, was entitled to sue upon them without reference to the citizenship of any prior holder. *Thompson* v. *Perrine*, 106 U. S. 589, 592–3. This point was properly decided for the plaintiff.

III. Was the statute under which the bonds in suit were issued in violation of the Constitution of the United States?

The Circuit Court held that it was; and the plaintiff having elected to stand upon his petition, the action was dismissed.

Looking at all the provisions of the statute that court held that the case was embraced by *Norwood* v. *Baker*, 172 U. S. 269, 279, 297, and upon the authority of that case held that the bonds were issued in contravention of the Fourteenth Amendment of the Constitution of the United States prohibiting the taking of property without due process of law.

In *Norwood* v. *Baker* it was said that "the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess,* a taking, under the guise of taxation, of private property for public use without compensation," and that the assessment involved in that case, made against abutting property, to pay the cost and expense of opening a street in a village, was illegal and void because made "under a rule which excluded any inquiry as to special benefits, and the necessary operation of which was, to the extent of the excess of the cost of opening the street in question over any special benefit accruing to the abutting property therefrom, to take private property for public use without compensation."

We are of opinion that the Circuit Court erred in holding that the petition made a case that necessarily brought it within the decision in *Norwood* v. *Baker* so far as the relief sought by the plaintiff was concerned.

We have seen that the first section of the act of 1893 authorized and required the improvement to be made, and directed the township to appropriate, enter upon and hold any real estate necessary for such purpose; that the second section directed that proceedings for condemnation be immediately taken in the probate court under specified sections of the Revised Statutes of Ohio; that the third section prescribed how the assessment to meet the cost of improvement shall be made, namely, "upon each front foot of the lots and lands abutting on each side of said Williams avenue between the termini mentioned;" and that a separate section, the fourth, directed bonds to be issued "for the purpose of raising money necessary to meet the expense of the improvement."

The second section of the act directed the trustees of the township to make immediate application to the probate court of the county, as provided in section 2236 of the Revised Statutes of Ohio, and declared that the proceedings thereafter, as far as practicable, should conform to the provisions of sections 2236 to 2261, inclusive. Those sections do not relate to modes of assessment, but only to the steps to be taken by a municipal corporation when it appropriates private property for public purposes. From other sections of those statutes it appears that when the municipal corporation appropriates or otherwise acquires lots or lands for the purpose of laying off, opening, extending, straightening or widening a street, alley or other public highway, or is possessed of property which it desires to improve for street purposes, the council may decline to assess the cost and expenses of such appropriation or acquisition, and of the improvement, upon the general tax list, in which case the same " shall be assessed upon all the taxable real and personal property in the corporation." § 2263. But by section 2264 it is provided that in all cases where an improvement of any kind is made of an existing street, alley or other public highway, and the council declines to assess the costs and expenses or any part thereof on the general tax list, the amount not so assessed shall be assessed by the council on the abutting and such adjacent and contiguous or other benefited lots and lands in the corporation, *either* in proportion to the benefits which may result from the improvements, *or* according to the value of the property assessed, *or* by the front foot of the property bounding and abutting upon the improvement, as the council by ordinance, "setting forth specifically the lots and lands to be assessed, may determine before the improvement is made" —the assessments to be payable in 'one or more instalments, and at such times as the council might prescribe.

Now let it be supposed that the third section of the special act in question prescribed a rule by which all inquiry is precluded in respect of special benefits accruing to the adjoining property owners, and that an assessment under that section would be invalid under the decision in *Norwood* v. *Baker*, as taking private property for public use without just compensa-

tion—upon which question we express no opinion—would it follow that the township would escape liability on the bonds? We think not. The fourth section of the act, authorizing and *directing* bonds to be issued for the purpose of raising the money necessary to meet the expenses of the improvement in question, may stand with sections one and two, even if section three were held to be void as prescribing an illegal mode of assessment. The power to issue bonds to raise the money, and the mode in which the township should raise the necessary sums to pay the bonds when due as well as the interest accruing thereon from time to time, are distinct and separable matters.

If the act under which the bonds were issued had not contained any provision whatever for an assessment to raise money to meet them, the township could not have repudiated its obligation to pay the bonds; for in the act would be found the command of the legislature to widen and extend Williams avenue, to immediately secure by proceedings in the probate court the land required for the proposed work, and to issue bonds to raise the money necessary to meet the expenses of the improvement. We ought not to hold the statute invalid if it failed to provide some legal mode of assessment to raise money to pay the bonds when they matured, with the interest accruing thereon. The statute, so far as the question of the power to issue bonds and put them on the market is concerned, may be carried into effect without reference to the third section. So that if that section were held void under *Norwood* v. *Baker*, the remaining sections, being valid, can stand and their provisions be executed.

There is some ground for saying that the legislature would not have passed the act without the third section; and that was the view expressed by the learned judge who tried the case below. But we do not think that such is so manifestly the case as to justify the courts in refusing to execute the valid parts of the statute when that can be done in harmony with the intention of the legislature to have the improvement in question made by the township and its cost met by issuing bonds. We think the case comes within *Treasurer* v. *Bank*, 47 Ohio St. 503, 523, in which the court said: "The question

arises, however, whether, if that portion of the section is declared wholly or in part unconstitutional and void, it may not result in invalidating the entire section. As one section of a statute may be repugnant to the Constitution without rendering the whole act void, so, one provision of a section may be invalid by reason of its not conforming to the Constitution, while all the other provisions may be subject to no constitutional infirmity. One part may stand, while another will fall, unless the two are so connected, or dependent on each other in subject matter, meaning or purpose, that the good cannot remain without the bad. The point is, not whether the parts are contained in the same section, for, the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance—whether the provisions are so interdependent that one cannot operate without the other."

The relief asked and the only relief that could be granted in the present action, is a judgment for money. If the township should refuse to satisfy a judgment rendered against it, and if appropriate proceedings are then instituted to compel it to make an assessment to raise money sufficient to pay the bonds, the question will then arise whether the mode prescribed by the third section of the act of 1893 can be legally pursued; and if not, whether the laws of the State do not authorize the adoption of some other mode by which the defendant can be compelled to meet the obligations it assumed under the authority of the legislature of the State. All that we now decide is that, even if the third section of the state statute in question be stricken out as invalid, the petition makes a case entitling the plaintiff to a judgment against the township. Whether a judgment if rendered could be collected, without further legislation, depends upon considerations that need not now be examined.

IV. But it is contended that, independently of any question of Federal law, the statute of Ohio under which the bonds were issued was in violation of the constitution of that State in that when requiring the defendant township to widen and extend the avenue in question the legislature exercised administrative, not legislative powers. This contention is not supported by the de-

cisions of the Supreme Court of Ohio made prior to the issuing of these bonds. Those decisions were to the contrary.

In *Hibbs* v. *Commissioners*, 35 Ohio St. 458, 467, decided in 1880, the question was directly presented as to the validity under the constitution of Ohio of a statute authorizing and directing a particular county to levy a special tax, not to exceed a given amount, for the purpose of building, grading and gravelling or macadamizing a named public highway. On behalf of the county it was insisted that the legislature could not constitutionally compel it or the people to make an improvement of merely a local character, for the reason that the local authorities were made by the constitution the sole judges of the necessity of such an improvement. The Supreme Court of the State said: "The power of the legislature to pass a mandatory statute, requiring the commissioners to levy the tax and improve the road in question, is denied by the defendant. The only provision which the constitution contains with respect to the county commissioners is the following: 'The commissioners of counties, the trustees of townships, and similar boards, shall have power of local taxation as may be prescribed by law.' Art. 10, Sec. 7. Manifestly this is no limitation on the power of the General Assembly; and the inquiry therefore is as to the extent of such power. That it is only legislative is conceded, but that is undeniably a very broad power and includes, generally, the right to direct, *in invitum*, the construction and repair of public highways, and the levy of taxes to defray the necessary expenses thereof. That the power is liable to great abuse is denied by no one, but the responsibility, as well as the power, rests with the legislature."

But in *State* v. *Commissioners*, 54 Ohio St. 333, and *Hixson* v. *Burson*, 54 Ohio St. 470, decided in 1896, the principle announced in *Hibbs* v. *Commissioners* was declared to be unsound. In the first case the Supreme Court of Ohio held to be invalid, an act of the legislature which, without the petition of any one interested, authorized certain local improvements to be made with the consent of the county commissioners, but which was so framed as to require the commissioners to proceed in the way and to the extent mapped out by the legislature. The court

said that the act was "an assumption of powers over the affairs of a county not possessed by the General Assembly—it is administrative in character and not legislative." "It is simply a usurpation of the powers heretofore always allowed to the proper administrative boards selected by the people of the localities concerned in the exercise of the right of local self-government." In the latter case the court expressly overruled the second syllabus in *Hibbs* v. *Commissioners*, (which under the statutes of Ohio is to be regarded as presenting the point adjudged,) stating that "an act providing for the improvement of a designated county road is local in its nature, and not in conflict with article 2, section 26, of the constitution, which provides that 'all laws of a general nature shall have a uniform operation throughout the State.'"

What, under these circumstances, was the duty of the Circuit Court? That court, speaking by Judge Thompson, held that its duty was to enforce the provisions of the constitution of Ohio as interpreted by the Supreme Court of that State at the time the bonds were issued, and not permit the contrary decisions, made after the bonds were issued, to have a retroactive effect. This was in accordance with the long-established doctrine of this court, to the effect that the question arising in a suit in a Federal court of the power of a municipal corporation to make negotiable securities is to be determined by the law as judicially declared by the highest court of the State when the securities were issued, and that the rights and obligations of parties accruing under such a state of the law would not be affected by a different course of judicial decisions subsequently rendered any more than by subsequent legislation. Our decisions to that effect are so numerous that any further discussion of the question is unnecessary, and we need only cite some of the adjudged cases. *Rowan* v. *Runnels,* 5 How. 134; *Ohio Life Ins. and Trust Co.* v. *Debolt,* 16 How. 416, 432; *Olcott* v. *The Supervisors,* 16 Wall. 678; *Douglass* v. *County of Pike,* 101 U. S. 677; *Taylor* v. *Ypsilanti,* 105 U. S. 60, 71; *County of Ralls* v. *Douglass,* 105 U. S. 728; *Green County* v. *Conness,* 109 U. S. 104, 105; *Anderson* v. *Santa Anna,* 116 U. S. 356, 361–2;

*German Savings Bank* v. *Franklin County*, 128 U. S. 526, 539;
*Wade* v. *Travis County*, 174 U. S. 499, 510.

It should be here said that the doctrine of prior cases was not
in anywise changed or impaired by the decision in *Central Land
Company* v. *Laidley*, 159 U. S. 103, 111, in which it was held
that, under the statute giving this court authority to review
the judgment of the highest court of the State, we were with-
out jurisdiction if the action of that court was impeached simply
on the ground that it had not determined the rights of the
plaintiff in error in accordance with its decisions in force when
those rights accrued, but had followed its decisions of a con-
trary character rendered after his rights had accrued.   This
court held that a mere change of decision in the state court did
not present a question of Federal right under that clause of the
Constitution of the United States prohibiting a State from pass-
ing any law impairing the obligation of contracts — that the
question of such impairment did not arise unless the judgment
complained of gave effect to some provision of the state con-
stitution or some enactment claimed by the defeated party to
impair the obligation of the particular contract in question.
As, however, the Circuit Courts of the United States are courts
of "an independent jurisdiction in the administration of state
laws, coördinate with and not subordinate to that of the state
courts, and are bound to exercise their own judgment as to the
meaning and effect of those laws," *Burgess* v. *Seligman*, 107
U. S. 20, 33, 34; *Folsom* v. *Ninety-six*, 159 U. S. 611, 624, 625,
they may, in suits within their jurisdiction, properly hold, as in
numerous cases this court has held, that the rights of parties
arising under contracts not involving questions of a Federal
nature are to be determined in accordance with the settled prin-
ciples of local law as maintained by the highest court of the
State at the time such rights accrued.   The statutory provision
that the laws of the several States, except where the Constitu-
tion, treaties or statutes of the United States otherwise require
or provide, shall be regarded as rules of decision in trials at
common law, in courts of the United States, in cases where
they apply, Rev. Stat. § 721, has not been construed as abso-
lutely requiring conformity, in such cases, to decisions of the

state courts rendered after the rights of parties have accrued under the previous decisions of those courts of a contrary character.

It results that the Circuit Court did not err in overruling the point raised under the demurrer at the hearing below, to the effect that the state enactment was invalid under the constitution of the State.

The judgment is reversed and the cause remanded with directions for further proceedings consistent with law and this opinion.

*Reversed.*