### ROBERTS et al. v. ATLANTIC OIL PRODUCING CO.

(Circuit Court of Appeals, Sixth Circuit.   January 19, 1924.)

No. 3993.

1. **Constitutional law** ⚖➡54—**Mines and minerals** ⚖➡58—**Statutes** ⚖➡76(1)—**Statute providing that oil and gas leases shall be valid and enforceable contracts held valid.**

Acts Ky. 1920, c. 24, § 2, providing that oil and gas leases shall be valid and enforceable contracts in accordance with their terms, and shall be so construed by the courts, is not invalid as an attempted exercise of judicial power, nor as class legislation, within the inhibition of Const. Ky. § 59, subd. 29, but is valid as a declaration of the public policy of the state.

2. **Statutes** ⚖➡64(1)—**Rule for determining whether partial invalidity invalidates entire act.**

Where it is necessary, to a determination of whether invalidity of a portion of a statute invalidates the entire act, to consider the question whether or not the act would have been passed without the invalid provisions, if the mere elision of the words or provisions which give an unconstitutional effect will leave a consistent and workable act, the remainder will be valid, while, if modifications or limitations must be inserted or understood to avoid the fatally broad effect of the statutory language, the whole act must fail.

3. **Statutes** ⚖➡64(2)—**Kentucky statute validating oil leases held constitutional and valid as to future leases, though invalid as to existing leases.**

Acts Ky. 1920, c. 24, § 2, declaring valid and enforceable in accordance with their terms "all valid existing or future" oil or gas leases, though *held* invalid by the Kentucky Court of Appeals as to then existing leases, is valid as to future leases; the effect of such decision being only to require the elision of the words "existing or."

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit in equity by Nancy Roberts and others against the Atlantic Oil Producing Company.   Decree for defendant, and complainants appeal.  Affirmed.

Hugh Riddell, of Irvine, Ky. (Riddell & Shumate, of Irvine, Ky., on the brief), for appellants.

John T. Metcalf, of Winchester, Ky. (Beverly R. Jouett, of Winchester, Ky., on the brief), for appellee.

Before DENISON and DONAHUE, Circuit Judges, and WESTENHAVER, District Judge.

DENISON, Circuit Judge.   The customary form of oil lease, long in use in the older oil territory, was generally adopted in Kentucky when the development of its oil regions began.   A typical form of this lease grants, for a period of ten years, the right to drill for oil and gas for a share of what is found, and provides that the lessee shall complete the first well within one year or pay an annual rental of ten cents per acre until the well is drilled.   It was found that a large territory would be tied up by leases of this kind, which the lessees kept alive by paying the agreed rental, but upon which they did not drill, while

the landowners could not permit development by other operators, and must sometimes stand by and see their oil drained away to adjacent wells. In this situation, the Kentucky Court of Appeals declared it to be an implied condition of all such leases that there should be a reasonably prompt development or testing by wells, regardless of the conditional delay given by the language of the lease, and it was said to be the law of Kentucky that a lessor could demand reasonably prompt drilling, and, not getting it, could terminate the lease, although the agreed rental might be tendered. This was first declared in Monarch Co. v. Richardson, 124 Ky. 602, 99 S. W. 668, and is spoken of as the Monarch-Richardson rule. Whether it was more than a dictum was long doubted, but eventually it was thoroughly established, and became a part of the public policy and rules of property of Kentucky. See Lyon v. Union Co. (C. C. A. 6) 281 Fed. 674, 677.

Opponents of the rule urged that it was injurious and unwise, because a pipe line was essential for the development of any new territory, and such a line required so much capital that it could only be built by an interest controlling a large territory, over which the drilling could advance gradually for a long time. Hence, they said, the Monarch-Richardson rule impeded progress. Moved apparently by these considerations, the Legislature passed chapter 24 of the Acts of 1920, section 2 of which is given in the margin.[1] The Kentucky Court of Appeals has held another section of this act to be unconstitutional so far as it relates to leases then existing. Union Co. v. Diles, 254 S. W. 205. The instant case presents to this court the question whether the statute is also invalid so far as it applies to the future leases which it mentions.

[1] We must overrule the objection that the entire statute is invalid, because it is a legislative attempt to exercise judicial power, contrary to the established line of separation in Kentucky. See the cases on this subject reviewed by us in Louisville Co. v. Western Union Co., 268 Fed. 4, 10. As to the future, we regard the statute as plainly an effort to change and fix the public policy of the state, and this is a legislative function. This is not special legislation, within the inhibition of section 59 (29) of the Kentucky Constitution. It applies to all persons and to all contracts of the class described. The selection of the particular contracts named is plainly justified by the applicable principles of classification.

[2] The question remains whether the partial invalidity as to existing leases affects the whole. The general rule clearly is that, when a statute is in part unconstitutional, the remainder is valid if, and only if, it is "separable;" that is, if the Legislature would have passed it in the restricted form necessary to make it legally effective. The dif-

1 Act March 18, 1920—"Sec. 2. That all valid existing or future contracts and leases for oil and gas rights upon and under the lands of this commonwealth, wherein by their terms a rental clause is provided in event of failure to drill for oil or gas within a given period, are hereby validated and declared to be, and shall be, construed by the courts of this commonwealth enforceable and binding contracts according to the terms thereof between the parties so long as the rentals therein provided shall be paid or tendered at and as provided by their terms during the period of said lease and contract."

ficulty is in determining what the Legislature would have done, if it had not done what it did do. Upon this question the federal courts will follow the Supreme Court of the state. Smiley v. Kansas, 196 U. S. 447, 455, 25 Sup. Ct. 289, 49 L. Ed. 546 (but see Spraigue v. Thompson, 118 U. S. 94, 95, 6 Sup. Ct. 988, 30 L. Ed. 115 contra). Sometimes the question is solved by an express declaration in the act that, if any section be found invalid, other sections will stand.[2] Sometimes the remainder of the statute and other considerations justify a positive conclusion by the court that the legislation was[3] or was not[4] separable in the sense now involved. There are many cases between these two extremes, and in which the inference must be uncertain, unless it may be aided by a presumption or formula which the law draws or applies. The Supreme Court, under the facts in one case, has said that the valid portion of the law will not be enforced unless the court can see that it would have been passed in the modified form,[5] and in another case it has said that such remaining part will be carried into effect unless the court can see that the act would not have passed if thus limited.[6] In neither of these cases was it necessary thus to place the burden of inference.

From a review of all the Supreme Court decisions, we think it may safely be said, as to those cases where it is necessary or advisable to solve or aid in solving the problem by resort to such a presumption or rule of inference, that if we find that a mere elision of those words, or even sections, which give an unconstitutional effect, will leave a consistent and workable act, this remainder will be held valid; while if (also in cases where such resort is needed) modifications or limitations must be inserted or understood, to avoid the fatally broad effect of the statutory language, the whole act must fail. In other words, we may strike out the excess, but may not add a limitation. Illustration of this distinction may be found in two cases otherwise not easily reconciled. The first Employers' Liability Act (34 Stat. 232) provided that all employés of railroads which were within the District of Columbia and the territories, or which were engaged in interstate commerce, should have certain rights of action. In the Employers' Liability Cases, 207 U. S. 463, 501, 28 Sup. Ct. 141, 52 L. Ed. 297, it was held that the extension to all employés of railroads, which railroads

[2] Ohio Tax Cases, 232 U. S. 576, 594, 34 Sup. Ct. 372, 58 L. Ed. 737. Even such a provision sometimes cannot survive an inevitable inference to the contrary. Hill v. Wallace, 259 U. S. 44, 42 Sup. Ct. 453, 66 L. Ed. 822.

[3] Here should be classified those cases where there is a statutory provision that if any section is held bad, the others shall remain good, and also the numerous cases where the penalties are held separable; e. g., L. & N. R. R. Co. v. Garrett, 231 U. S. 298, 34 Sup. Ct. 48, 58 L. Ed. 229.

[4] Virginia Coupon Cases, 114 U. S. 270, 304, 5 Sup. Ct. 903, 962, 29 L. Ed. 185; Spraigue v. Thompson, 118 U. S. 90, 95, 6 Sup. Ct. 988, 30 L. Ed. 115; Pollock v. Farmers L. & T. Co., 158 U. S. 601, 635, 15 Sup. Ct. 912, 39 L. Ed. 1108; International Co. v. Pigg, 217 U. S. 91, 114, 30 Sup. Ct. 481, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103.

[5] El Paso v. Gutierrez, 215 U. S. 87, 97, 30 Sup. Ct. 21, 54 L. Ed. 106.

[6] Reagan v. Farmers' L. & T. Co, 154 U. S. 382, 395, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Loeb v. Columbia Twp., 179 U. S. 472, 489, 21 Sup. Ct. 174, 45 L. Ed. 280.

were engaged in interstate commerce, was unconstitutionally broad, and that the provision could not, in order to save it, be restricted to those employes who were themselves so engaged. That would be adding a limitation which Congress had not approved; and the whole statute, so far as it reached interstate commerce, was found inoperative. The same statute was again considered in El Paso v. Gutierrez, 215 U. S. 87, 30 Sup. Ct. 21, 54 L. Ed. 106, and it was held valid, as to employés in the District of Columbia or the territories, because all defects could be cured by striking out the interstate commerce clause. The cases of this marginal or uncertain class are collected in the note, and they seem to support this distinction.[7]  We observe that while,

[7] Cases which make elision and enforce remainder:

Unity v. Burrage, 103 U. S. 447, 26 L. Ed. 405. Invalid sections were eliminated, and the others enforced as they read.

Penniman's Case, 103 U. S. 714, 26 L. Ed. 602. The statute said: "No person shall be imprisoned, nor his property attached," etc. Laws 1877, R. I. c. 600, § 1. Held, that the prohibition of attachment was invalid; that it should be cut out, and the prohibition of imprisonment enforced.

Presser v. Illinois, 116 U. S. 252, 6 Sup. Ct. 580, 29 L. Ed. 615. An extreme case of elision and partial enforcement, because the greater part of the law was held invalid (or assumed) to be invalid. See Baldwin v. Franks, 120 U. S. at page 689, 7 Sup. Ct. 656, 763, 30 L. Ed. 766.

Field v. Clark, 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294. Unconstitutional features of a tariff law were ignored, and the remainder held valid.

Reagan v. Farmers L. & T. Co., 154 U. S. 362, 395, 14 Sup. Ct. 1047, 38 L. Ed. 1014. Assuming that one important part was invalid, still the remainder was enforced. "Any independent provision may be thus dropped out, if that which is left is fully operative," etc.

Loeb v. Columbia, 179 U. S. 472, 489, 21 Sup. Ct. 174, 45 L. Ed. 280. The section providing for an assessment to pay the bonds was invalid, but the sections providing for their issue were upheld. If a complete act remained, it would be enforced.

Diamond Co. v. United States, 187 U. S. 611, 617, 23 Sup. Ct. 206, 47 L. Ed. 328. A statute directed against corporations and partnerships was enforced against corporations, even though invalid as to partnerships.

Berea College v. Kentucky, 211 U. S. 45, 29 Sup. Ct. 33, 53 L. Ed. 81. A statute directed against individuals and corporations was invalid as to individuals, but was enforced as to corporations. The argument seems to be that, because some words could be stricken out and leave a completely enforceable act against corporations, it would be assumed that the Legislature intended to have the act take effect as far as valid.

El Paso v. Gutierrez, 215 U. S. 87, 30 Sup. Ct. 21, 54 L. Ed. 106. The words which carried the act beyond the constitutional scope were stricken out, and the complete act which remained was held valid (see text).

Cases which refuse to imply or to add a validating reservation:

United States v. Reese, 92 U. S. 214, 221, 23 L. Ed. 563. Could a prohibition, in universal terms, be limited to the scope of the constitutional power involved? Answer—No. "The proposed effect is not to be attained by striking out or disregarding words that are in the section, but by inserting those that are not now there."

The Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550. Could a provision for registering any lawful trade-marks be confined to those used in interstate commerce? Answer—No. "The courts cannot give to the words used a narrow meaning, in order to hold the act within constitutional limits."

Baldwin v. Franks, 120 U. S. 678, 686–689, 7 Sup. Ct. 656, 763, 30 L. Ed. 766. Could a provision which embraced, by one indivisible phrase, those who violated either state or federal laws be held valid as to the latter, though it could not be as to the former? Answer—No; because the limitation would

in an exceptional case or two, the court has enforced a statute in the aspect in which there was power to pass it, even though to do so required placing a limitation upon the language used, yet it has usually refused to take this course, but that in those cases in this marginal class, where the invalidity could be cured merely by elision, the court has, without exception, held the remainder of the statute valid and enforceable.

[3] Turning to the instant case: Some features, including some found in other sections of the act, are rather persuasive that the act would have been passed if it had referred alone to future leases. It may be that we would be compelled to that conclusion without the aid of any such rule as we have been discussing; but if there is otherwise doubt as to this inference, we are satisfied to let it be thus determined. If the two words "existing or" are cut out, the remainder of this section is valid, consistent, and complete; and, accordingly, we conclude that it is in full force and effect as to this lease, and affirm the decree below.

have to be made "by construction and not by separation." The distinction of the text is here fully developed.

Connolly v. Union Co., 184 U. S. 540, 565, 22 Sup. Ct. 431, 46 L. Ed. 679. To strike out an exception and enforce the act without it is to add to the scope of the law, not to restrict it. The courts will not do this.

United States v. Ju Toy, 198 U. S. 253, 262, 25 Sup. Ct. 644, 49 L. Ed. 1040. Cases declaring inseparability, and hence complete invalidity, are reviewed under the proposition: "The relevant portion, being a single section, accomplishing all its results by the same general words, must be valid as to all that it embraces, or altogether void. An exception of a class constitutionally exempted cannot be read into those general words merely for the purpose of saving what remains."

Illinois Central v. McKendree, 203 U. S. 514, 27 Sup. Ct. 153, 51 L. Ed. 298. An act forbidding any traffic across a quarantine line was invalid as to intrastate traffic, and therefore invalid as to all traffic, since the court could not insert a limitation.

Employers' Liability Cases, 207 U. S. 463, 501, 28 Sup. Ct. 141, 52 L. Ed. 297. A unitary provision, as to any employés, could not be enforced as to those only whom Congress had power to reach (see reference in text).

Butts v. Merchant Co., 230 U. S. 126, 33 Sup. Ct. 964, 57 L. Ed. 1422. Both the invalid and the otherwise valid parts of the Civil Rights Act (Comp. St. §§ 3926–3930) depended on the same general words. One could not be saved without the other.

Hill v. Wallace, 259 U. S. 44, 42 Sup. Ct. 453, 66 L. Ed. 822. Even in the presence of a section declaring that if parts of the act were held invalid the remaining parts should be enforced, the court concluded that certain sections could not be enforced, when, to make them valid, it would be necessary to introduce limitations which they did not contain. "Section 11 did not intend the court to dissect an unconstitutional measure and reframe a valid one out of it by inserting limitations it does not contain. This is legislative work."

But see Packet Co. v. Keokuk, 95 U. S. 80, 24 L. Ed. 377, and Ratterman v. Western Union Co., 127 U. S. 411, 8 Sup. Ct. 1127, 32 L. Ed. 229; which in result seem inconsistent with the suggested distinction, but each of which may rightly stand on other reasons (as, in the latter, the dominating need for collecting revenue); and see Huntington v. Worthen, 120 U. S. 97, 7 Sup. Ct. 469, 30 L. Ed. 588, which, though it declares that it was striking out an invalid part and enforcing the remainder, seems not to observe that the part stricken out was a limitation, and the court was therefore really adding, not subtracting. This was also a revenue case.