WILLIAMS, Senior Circuit Judge,
concurring:
I join the majority’s opinion in full; on the basis of the currently prevailing authorities it is entirely sound. I question, however, whether this whole trip was necessary. If I read the Court’s precedents correctly, the answer is no; under the law prevailing until the 1970s, we would be rather handily finding that the Puerto Rico Ports Authority lacks sovereign immunity.
Puerto Rico created the Authority as a separate legal person with the capacity “[t]o sue and be sued.” P.R. Laws Ann. tit. 23, § 336(e). One might think that this language means what it says, so that the Authority would be amenable to suit in any court of competent jurisdiction. Until fairly recently, that thought would have been correct.
Sovereign immunity has its roots in a doctrine of personal jurisdiction. See Caleb Nelson, Sovereign Immunity as a Doctrine of Personal Jurisdiction, 115 Harv. L.Rev. 1559 (2002). A sovereign state may choose to waive its personal immunity or to create separate legal persons that do not share the immunity. Under the old learning, courts saw such a separate legal person as obviously subject to suit.
At the time of our founding, the existence of a separate legal person, with the capacity to sue and be sued, was precisely what set certain non-immune state entities apart from the state itself. Cities, towns, and counties were all recognized as particular types of corporations, known as municipal or “public” corporations. See Trs. of Dartmouth Coll. v. Woodward, 17 U.S. (4 Wheat.) 518, 668-69, 4 L.Ed. 629 (1819) (opinion of Story, J.). As corporations, they were “artificial person[s], existing in contemplation of law” and possessing “the capacity ... of suing and being sued in all things touching [their] corporate rights and duties.” Id. at 667. It was this corporate status that, at common law, had made them amenable to suit. See, e.g., Russell v. Men Dwelling in the County of Devon, (1788) 100 Eng. Rep. 359, 362 (K.B.) (opinion of Kenyon, C.J.); see also id. at 360 (argument of counsel). Such a corporation maintained its separate identity (and thus its suability) even if the state held an unqualified financial interest in the corporation’s success, see Bank of the Commonwealth of Ky. v. Wister, 27 U.S. (2 Pet.) 318, 323, 7 L.Ed. 437 (1829), or had delegated to it the broadest imaginable sovereign powers, see Barnes v. District of Columbia, 91 U.S. (1 Otto) 540, 544-45, 23 L.Ed. 440 (1875). In a decision rendered the same day as Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the Supreme Court found it “beyond question” that Lincoln County, Nevada, was outside the scope of the state’s immunity. Lincoln County v. Luning, 133 U.S. 529, 530, 10 S.Ct. 363, 33 L.Ed. 766 (1890). Despite a claim that the county was an “integral part of the State,” id., the Court held it amenable to suit because “politically it is also a corporation created by and with such powers as are given to it by the State,” including the power to “sue and be sued in all courts in like manner as individuals.” Id. at 530-31, 10 S.Ct. 363. (Of course requests for some kinds of relief, such as for an order of specific action on *882 state property, may render the state itself a necessary party. Hopkins v. Clemson Agricultural College, 221 U.S. 636, 648-49, 31 S.Ct. 654, 55 L.Ed. 890 (1911); see also Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738, 842-43, 858, 6 L.Ed. 204 (1824) (Marshall, C.J.); Paul M. Bator et al., Hart & Wechsler’s The Federal Courts and the Federal System 1370-71 (2d ed.1973).)
Lincoln County was only one in a long train of cases holding that sovereign immunity does not extend to corporations that the sovereign (i.e., a state or the federal government) has created as separate legal persons. See, e.g., Sloan Shipyards Corp. v. U.S. Shipping Bd. Emergency Fleet Corp., 258 U.S. 549, 567, 42 S.Ct. 386, 66 L.Ed. 762 (1922) (“The meaning of incorporation is that you have a person, and as a person one that presumably is subject to the general rules of law.”); Hopkins, 221 U.S. at 645, 31 S.Ct. 654 (“[N]either public corporations nor political subdivisions are clothed with that immunity from suit which belongs to the State alone by virtue of its sovereignty.”); see also id. at 646, 31 S.Ct. 654; Workman v. New York City, 179 U.S. 552, 565, 21 S.Ct. 212, 45 L.Ed. 314 (1900); Loeb v. Columbia Twp. Trs., 179 U.S. 472, 485-86, 21 S.Ct. 174, 45 L.Ed. 280 (1900); Chicot County v. Sherwood, 148 U.S. 529, 533-34, 13 S.Ct. 695, 37 L.Ed. 546 (1893); Metro. R.R. Co. v. District of Columbia, 132 U.S. 1, 6, 9, 10 S.Ct. 19, 33 L.Ed. 231 (1889); Cowles v. Mercer County, 74 U.S. (7 Wall.) 118, 121-22, 19 L.Ed. 86 (1868); Weightman v. Corp. of Washington, 66 U.S. (1 Black) 39, 49-50, 17 L.Ed. 52 (1861). Though the defendants were municipal or local corporations in the last six cases in this group, the Emergency Fleet Corporation was nationwide and Clemson appears to have been the state agricultural college for the entirety of South Carolina. Even the cases involving local corporations manifested no interest in the fact of locality, and the decision concerning Clemson cited Lincoln County without suggesting that it was in any way extending that case’s doctrine.
Unfortunately, this longstanding bright-line rule was not to last. The first step in its demolition was a series of decisions in the 1940s establishing a clear statement rule against federal jurisdiction. Previously, the Court had construed state laws consenting to suits against a particular state officer or department to permit suits in federal courts as well, unless the terms of the consent indicated otherwise. See, e.g., Smith v. Reeves, 178 U.S. 436, 441, 20 S.Ct. 919, 44 L.Ed. 1140 (1900) (reading California’s conditional consent to suits against the state treasurer—which enabled the treasurer to insist that the action be tried in a particular state court—as naturally excluding federal suits). In 1944, however, in a suit against state tax collectors, the Court reversed this statute—specific approach in favor of a clear statement rule, requiring “a clear declaration of the state’s intention to submit its fiscal problems to other courts than those of its own creation.” Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); see also id. at 55, 64 S.Ct. 873 (citing Reeves); Ford Motor Co. v. Dep’t of Treasury of Ind., 323 U.S. 459, 465, 65 S.Ct. 347, 89 L.Ed. 389 (1945) (applying Read). In Kennecott Copper Corp. v. State Tax Comm’n, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946), the Court went so far as to read a consent to suit “in any court of competent jurisdiction” as excluding federal courts, simply because another state statute had consented to suits on a different matter “in any court of this state or of the United States.” *883 Id. at 575 n. 1, 580, 66 S.Ct. 745.[1]
The Court took the second and critical step in Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). There for the first time it passed in silence over its former rule that a state’s government corporations, with a general capacity of suing and being sued in their own names, were ipso facto completely bereft of sovereign immunity. The defendant Board of Education conceded that state law made it a corporate body capable “of suing and being sued.” See Ohio Rev. Code 3313.17, cited in Brief of Petitioners, Mt. Healthy v. Doyle, 1976 WL 181610, at *28 (1976). The Court nonetheless doubted whether Ohio “had consented to suit against entities such as the Board in the federal courts,” Mt. Healthy, 429 U.S. at 279-80, 97 S.Ct. 568, citing a case from the Great Northern line (namely Ford Motor), and thus implicitly extending its cautious rule for state waivers into the context of state government corporations.[2]
Yet the Court remembered that cities and other political subdivisions were subject to suit, see id. at 280, 97 S.Ct. 568 (citing Lincoln County), even as it forgot the underlying reason for their being so. To fill the gap, Mt. Healthy produced a multi-factor test of family resemblance, asking whether the school board in the case at hand was “more like a county or city than it is like an arm of the State.” Id. (emphasis added). It is unclear why the answer to this perhaps metaphysical question should help resolve the scope of governmental corporate persons’ immunity. But by 1981 the Court took it as given that a state governmental corporate body’s general capacity to sue and be sued did not exclude the entity from the state’s personal immunity. See Fla. Dep’t of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass’n, 450 U.S. 147, 150, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (citing Smith v. Reeves); see also Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 676, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999).[3]
Since then, the law of arm-of-the-state immunity has only become more labyrinthine. See generally Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994); Morris v. Wash. Metro. Area Transit Auth., 781 F.2d 218 (D.C.Cir.1986). Under the old rule of Hopkins, by contrast, the only jurisdictional inquiry necessary in such a *884 case would be to examine the entity’s organic statute and determine whether it was a corporation and legal person capable of appearing in its own name. As it happens, not only was the Authority given the power to sue and be sued, it was established as a “public corporation with a legal existence and personality separate and apart from those of the Government [of Puerto Rico] and any officials thereof.” P.R. Laws Ann. tit. 23, 333(b). So in the days before Mt. Healthy the jurisdictional issue here would have been easy.
As an inferior tribunal, however, we are bound by the Court’s decisions no matter how much unwelcome complexity they produce. I therefore concur in the majority opinion.

.The Court established no such rule, of course, for cases concerning entities endowed by the federal government with the capacity to sue and be sued. See, e.g., Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 705, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949) (noting that Congress had provided for amenability to suit by different means, in some cases "entrust[ing] the business of the Government to agencies which may contract in their own names and which are subject to suit in their own names,” and in others "per-mitt[ing] suits for damages ... in the Court of Claims”); Reconstruction Fin. Corp. v. J.G. Menihan Corp., 312 U.S. 81, 83, 61 S.Ct. 485, 85 L.Ed. 595 (1941); Fed. Hous. Admin. v. Burr, 309 U.S. 242, 245, 60 S.Ct. 488, 84 L.Ed. 724 (1940); Keifer & Keifer v. Reconstruction Fin. Corp., 306 U.S. 381, 389, 59 S.Ct. 516, 83 L.Ed. 784 (1939). Since then the rule has become somewhat more confused, see Galvan v. Fed. Prison Indus., Inc., 199 F.3d 461, 466-67 (D.C.Cir.1999) (noting changes to the doctrine), but an applicable sue-and-be-sued provision remains fully effective, see FDIC v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).

. Ford Motor had concerned a special authorization of tax refund suits against the Indiana Department of the Treasury. See 323 U.S. at 465 & n. 8, 65 S.Ct. 347.

. Mt. Healthy thus created a divergence in the treatment of state and federal entities. Federal ones are generally governed by the previous doctrine, see supra note 1, while a wholly separate principle applies to state entities.