BOARD OF COM'RS OF FRANKLIN COUNTY, OHIO, v. GARDINER SAV. INST.

(Circuit Court of Appeals, Sixth Circuit. December 2, 1902.)

No. 1,106.

1. MUNICIPAL BONDS—COUNTY BONDS FOR ROAD IMPROVEMENT—OHIO STATUTE.
   Act Ohio March 26, 1890, as amended by Act Ohio March 7, 1892 (89 Ohio Laws, p. 66), authorizes county commissioners in counties in which there are situated cities of the first grade of the second class to improve roads or streets in certain cases, on petition, when they deem the same a judicious improvement, and to assess the cost thereof on abut-

ting property. It further authorizes them, "to provide for the payment of the costs and expenses of said improvement to be assessed upon the abutting property," to issue bonds and negotiate the same at not less than par, "as other bonds of said county are negotiated." It requires them to levy the assessments which shall be payable in installments to meet the bonds, and shall be a lien on the property, and to appropriate the same, when collected, solely to the payment of such bonds, and authorizes them, in case any bond or interest shall become due, and no money is in hand to pay the same, to make a temporary loan for the purpose, in which case the lien of the assessments shall continue for the benefit of the county. *Held*, that in the absence of any provision, either in the act, or in bonds issued thereunder, that such bonds should be payable only from the assessments when collected, they constituted obligations of the county, and that on default in their payment a holder was entitled to a judgment at law thereon against the county, without regard to the question of the means by which such judgment could be enforced.

2. FEDERAL COURTS—FOLLOWING STATE DECISIONS—LAW OF CONTRACT.

In a suit in a federal court on municipal bonds, the question of the validity of the legislative act under which they were issued is to be determined by the law of the state as judicially declared by its highest court at the time the bonds were issued; and where, under such law, the act was valid, the rights of a holder of the bonds cannot be affected by the fact that before the date of his purchase the court had overruled its prior decisions and declared it invalid.

3. MUNICIPAL BONDS—VALIDITY—PARTIAL INVALIDITY OF STATUTE.

The unconstitutionality of a method provided by law for making special assessments to pay bonds issued by a county to pay for road improvements, if conceded, does not affect the validity of the bonds as obligations of the county, or the right of a holder to recover judgment thereon.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

This action was brought to recover on certain bonds. The petition was drawn in the usual form of the Ohio Code, upon unconditional promises to pay, and contains a number of causes of action upon the bonds and coupons. It is alleged, among other things, that the bonds were issues on the 1st of January, 1894, by the board of commissioners of Franklin county, Ohio, and duly executed and sold by the defendant. The bonds were in the following form:

"State of Ohio.

"No.———

"Franklin County.

"North Fourth Street Improvement and Extension Bond.

"Know all men by these presents, that the county of Franklin, state of Ohio, is indebted to the bearer in the sum of one thousand dollars, lawful money of the United States of America, which sum of one thousand dollars the said county of Franklin promises to pay to the said bearer, at the office of the treasurer of said county, on the first day of January, A. D. ———, but redeemable and payable at any time on or before, at the option of said county, with interest at the rate of six per cent. per annum, payable semiannually on the first days of January and July of each year, upon the presentation and delivery of the proper coupon hereto annexed, signed by the commissioner of Franklin county, and countersigned by the county auditor at the said county treasurer's office, Columbus, Ohio. This bond is issued under and by virtue of section seven of an act of the general assembly of the state of Ohio, passed March 26th, A. D. 1890, entitled 'An act to authorize county commissioners in counties in which there are situated cities of the

¶ 2. State laws as rules of decision in federal courts, see notes to Griffin v. Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

first grade of the second class, to improve roads extending from such cities and other roads and streets in certain cases;' also by virtue of a resolution heretofore passed by the board of county commissioners of Franklin county, Ohio, on the 6th day of August, A. D. 1892; and it is to be paid for by an assessment upon the property abutting on North Fourth street (in Clinton township), from Chittenden avenue to the north line of Indianola Summit addition, for the purpose of improving and extending the same. In testimony whereof, we, the undersigned officers of Franklin county, Ohio, being duly authorized to execute this obligation on its behalf, have hereunto set our signatures, and caused the seal of said county to be hereunto affixed, this first day of January, A. D. 1894.           T. D. Cassidy,

"S. B. Biggert,

"J. B. McDonald,

"Commissioners of Franklin County, Ohio.

"Henry J. Caren, County Auditor."

The prayer of the petition is for a judgment at law upon the bonds for the aggregate sum of $5,630, with interest and costs. A demurrer was filed to the petition upon the following grounds:

"(1) The act of the general assembly passed March 26, 1890, as amended March 7, 1892, under and by virtue of which the bonds and coupons described in the petition were issued, contravenes article 2, § 26, of the constitution of Ohio, and therefore said bonds and coupons thereto attached are invalid.

"(2) Said act of the general assembly passed March 26, 1890, as amended March 7, 1892, under and by virtue of which the bonds and coupons described in the petition were issued, contravenes the fourteenth amendment of the constitution of the United States, and therefore said bonds and the coupons thereto attached are invalid.

"(3) On all of said bonds sued upon the petition, and to each of which the coupons set out in said petition were attached, there is contained the following condition and recital: 'This bond is issued under and by virtue of section seven of an act of the general assembly of the state of Ohio passed March 26, A. D. 1890, entitled "An act to authorize county commissioners in counties in which there are situated cities of the first grade of the second class, to improve roads extending from such cities and other roads and streets in certain cases;" also by virtue of a resolution heretofore passed by the board of county commissioners of Franklin county, Ohio, on the 6th day of August, A. D. 1892; and is to be paid for by an assessment upon the property abutting on North Fourth street (in Clinton township), from Chittenden avenue to the north line of Indianola Summit addition, for the purpose of improving and extending same.' "

Upon hearing, this demurrer was overruled. Afterwards the board of commissioners filed an answer in which they admitted that the bonds were issued under the authority of a certain act of the general assembly of Ohio, entitled "An act to authorize the county commissioners in counties in which there are situated cities of the first grade of the second class to improve roads extending from said cities and other roads and streets in certain cases" (87 Ohio Laws, p. 113); that the copies of the bonds as set out were true copies thereof; and that the bonds and coupons became due, and the plaintiff was the owner thereof, at the time the petition was filed. By way of special defenses, the commissioners set up further:

"Second Defense. That the total cost of the North Fourth street improvement, from Chittenden avenue to the north line of Indianola Summit addition, in Clinton township, to pay for which the bonds and interest coupons set out in the petition were sold, including the interest on the bonds to the next interest day when the assessments could be collected to pay for the same, amounted to $92,050.85, and that on the 3d day of December, 1895, the board of commissioners of Franklin county, Ohio, levied an assessment of eight dollars eighty-seven cents and eight and twelve-hundredths mills per front foot on all the property fronting and abutting on said improvement, and amounting in all to eighty-three thousand two hundred and seventy-six dollars and seventy cents ($83,276.70). That said assessment so levied was duly placed upon the tax duplicate of Franklin county, Ohio, against the property abutting

and fronting on said improvement on North Fourth street from Chittenden
avenue to the north line of Indianola Summit addition in Clinton town-
ship. That the county treasurer of Franklin county, Ohio, has proceeded to
and has collected said assessments as they became due, except the assessments
levied against the property of the following named owners: Sallie H. Sur-
guy, Sarah E. and D. R. Summy, the Summit Land Company, Wm. C.
Frech, W. E. Smith, Phœbe Thompson, Wm. E. Peters, Henry Boska, A.
C. Hartman, Estella M. Berry, Rebecca Ellis, Asa B. Dennison, John W.
Thompson, E. W. Dow, Mulby Bros., Cath. C. Cottingham. Eliza Wildermuth,
W. Guy Jones, Ira H. Miller, Hanna Goodman, Lynas B. Kauffman, Oscar
E. Miles, Harry N. Hills, Fred N. Abbott, Gilbert G. Raynor, Oliva A. Spear,
David E. Shrider, Henry Morton, Isaac E. Chaplear et al., Albert K. Neer,
Mary A. Meyers, The. A. Simons, Geo. W. Clark, Kate Speilman, and A. E.
Dennison,—which said property owners have filed their petition in the court
of common pleas of Franklin county, Ohio, and upon said petitions temporary
restraining orders have been issued against the treasurer of Franklin county,
Ohio, restraining him temporarily from collecting said assessments levied
against said property or any of them; and said restraining orders are still
in full force and effect, and have not been dissolved, and for that reason
the assessments so levied upon the property of the persons hereinbefore men-
tioned have not been collected, and the same remain unpaid. That all moneys
received from the assessments so levied upon the property abutting on North
Fourth Street, in Clinton township, from Chittenden avenue to the north
line of Indianola Summit addition, to pay for the improvement thereof, have
been appropriated by the proper officers of Franklin county, Ohio, solely to
the payment of the interest and redemption of said bonds so issued for said
improvement. And said fund is now entirely exhausted, and there remains
in the hands of the treasurer of said Franklin county, Ohio, no money which
has been collected from said assessments upon the property abutting upon
North Fourth street from Chittenden avenue to the north line of Indianola
Summit addition, in Clinton township. In addition to the moneys so collected
from said assessments, the sum of $7,100 has been applied to the payment of
the bonds and interest coupons which were issued to pay for the cost of
said North Fourth street improvement from Chittenden avenue to the north
line of Indianola Summit addition in Clinton township. By reason of the re-
straining order so issued as aforesaid, the treasurer of Franklin county,
Ohio, has been unable to collect said assessments as they became due. Said
treasurer of Franklin county, Ohio, the auditor of Franklin county, Ohio,
and the board of county commissioners of Franklin county, Ohio, have done
each and every act which has been authorized by the statutes by the state
of Ohio to levy and collect assessments provided for by the act of the general
assembly which authorized the issuing of the bonds and interest coupons sued
upon in the petition, and have failed to collect said assessments only by
reason of the temporary restraining order restraining the treasurer of Franklin
county, Ohio, from collecting the assessments hereinbefore set out. The board
of county commissioners of Franklin county, Ohio, refused to pay the bonds
and interest coupons set out in the petition for the reason that the constitu-
tion of the state of Ohio (article 10, § 5) provided, 'No money shall be
drawn from any county or township treasury except by authority of law.'
And the only authority which the defendant has for paying the bonds and
interest coupons set out in the petition is the act of general assembly of the
state of Ohio passed March 16, 1890, which authorized said board to pay
said bonds and interest only from such assessments as shall be collected from
the property abutting upon the improvement to pay for which said bonds are
issued. No tax has been levied by the defendant, the board of county
commissioners of Franklin county, Ohio, to pay the bonds and interest coupons
set out in the petition, except said assessment hereinbefore set out, to wit,
the assessments upon the property abutting upon North Fourth street, in Clin-
ton township, from Chittenden avenue to the north line of Indianola Summit
addition, as provided by sections 8 and 9 of said act of the general assembly
of the state of Ohio, passed March 26, 1890, for the reason that the constitu-
tion of Ohio (article 12, § 5) provides that no tax shall be levied except in pur-
suance of law, and every law imposing a tax shall state distinctly the object
of the same, to which only it shall be applied."

And for further defense:

"Third Defense. For a further and third defense to each and all of the alleged causes of action set out in the petition herein, the defendant avers that the said act of the general assembly of the state of Ohio passed March 26, 1890, as amended March 7, 1892, is and was in contravention of article 2, § 26, of the constitution of the state of Ohio, and is therefore null and void. That previous to the 28th day of April, 1896, legislative acts similar to the said act of March 26, 1890, were upheld and declared valid by the various courts of the state of Ohio. That on said 28th day of April, 1896, the supreme court of Ohio, the same being the highest judicial tribunal therein, in the case of Hixson v. Burson, 54 Ohio St. 470, 43 N. E. 1000, decided and adjudged that an act of the legislature of Ohio providing for the repairs and improvements of certain public highways, and which said act was similar to the said act of March 26, 1890, in that its subject-matter was general, while its application and effect were local, was in conflict with section 26, art. 2, of the constitution of Ohio, and was therefore void. That ever since the date of the decision of the said case of Hixson v. Burson by said supreme court of Ohio, to wit, since April 28, 1896, said court has declared each enactment of the legislature of Ohio authorizing the repair or improvement of the public highway, and which by its operation could only affect one county in the state, to be unconstitutional and void, for the reason that all such legislation was in violation of section 26 of article 2 of the constitution of Ohio. That at the time the said act of March 26, 1890, and the said amendment thereto, was passed, the only county in the state of Ohio which contained a city of the first grade of the second class was said Franklin county. All of the facts stated in this defense were well known to the plaintiff at the time it purchased the bonds and coupons, and each thereof, set out in the petition. The defendant denies that the plaintiff purchased the bonds and coupons set out in the petition, or any or either thereof, on the ——— day of ———, 1894, but alleges that neither thereof was purchased by the plaintiff, nor did it become the owner or holder thereof, until long after the said case of Hixson v. Burson was decided by the supreme court of Ohio, to wit, after the 28th day of April, 1896. The exact date when said purchase was made the defendant is not now able to state, for want of definite knowledge. Wherefore the defendant avers that the said supreme court of Ohio had, previous to the time when the plaintiff purchased and became the owner of any of the bonds or coupons set out in the petition, held, decided, and adjudged that all legislation in Ohio similar to the said act of March 26, 1890, was unconstitutional and void."

To this answer a demurrer was filed by the plaintiff, which was sustained by the court. No further pleadings being filed, a judgment was rendered for the plaintiff upon the bonds and coupons. A copy of the act under which the bonds were issued is here given, as follows:

"An act to authorize county commissioners in counties in which there are situated cities of the first grade of the second class to improve roads extending from such cities and other roads and streets in certain cases.

"Section 1. Be it enacted by the general assembly of the state of Ohio, that in counties in which there are cities of the first grade of the second class, county commissioners shall have authority to cause any of the streets or avenues, or parts thereof of said cities which may have been paved with granite or other stone block, asphalt or other permanent material to the limit of said city, to be extended beyond the limits of said cities and improved by paving as aforesaid, or to cause any other road or street within said counties to be so improved upon the following conditions, to wit:

"Sec. 2. The property owners of lands fronting upon such road, street or streets being desirous of having said road, street or streets extended and so improved beyond the limits of said cities, or any other road, street or streets within such counties so improved, shall petition said commissioners to have said street or streets extended, widened and so improved, as called for in said petition; said petition shall state therein with what material said street shall be paved, provided with sidewalks, gutters and other passages for carrying off the water, and stating therein to what point on said road or

street said improvement is to be extended, or between what points on such other road or street such improvement is to be made. No petition for the improvement of any road or street under the provisions of this act shall be, favorably considered by said commissioners unless it is signed by the property owners representing a majority of the feet frontage of the lands abutting upon said road or street, between the city limits mentioned therein, and the point designated in said petition where said improvement shall stop, or the points upon such other road or street where said improvements shall begin and end, and the distance between such points shall be mentioned by the number of feet upon the line of said road or street.

"Sec. 3. Whenever the commissioners of such county shall receive such petition, they shall appoint a time and place for the hearing of said application, not less than four weeks thereafter, publish a notice of such hearing in some newspaper of general circulation in the vicinity of the proposed improvement, for not less than two consecutive weeks, one each week, and cause service of said notice to be given to all owners of property fronting upon the proposed improvement, their agents or attorneys, at least two weeks before said hearing.

"Sec. 4. All owners of lots or lands bounding or abutting upon the proposed improvement claiming damages therefor, shall file a claim in writing with said county commissioners, setting forth the amount of damages claimed, together with a description of the property owned for which the claim is made, within one week after the expiration of the time required for [the] publication of said notice, and all such as shall fail or neglect to file their claim for damages aforesaid, within the time aforesaid, shall be deemed to have waived the same and be forever barred from filing any claim or recovering any damages therefor.

"Sec. 5. Upon 'the day appointed for said hearing, if no claim for damages or for appropriations have been filed, or if whatever claims have been filed are allowed by the commissioners as hereinafter authorized, the hearing may proceed, and if, upon such hearing, the county commissioners shall be satisfied that the owners of a clear majority of the feet front of land abutting upon said proposed improved roadway favor said improvement, and that the proposed improvements are judicious, it shall be their duty to declare said improvement authorized and established, and to declare the width of said road legalized and established, as of the dimensions and manner as prayed for in said petition, and to make a permanent record of their said action. When said action is taken by the county commissioners they shall immediately notify the county surveyor of their action; said commissioners shall have the authority to allow claims as presented or as may have been acted upon. They shall also have authority to sit as arbitrators, and hear all claims arising out of such proposed improvements. They may subpœna witnesses and hear testimony, and upon final hearing shall find and determine the amount, if any, fairly due the claimant, or that claimant is entitled to no damages, and their finding shall be conclusive.

"Sec. 6. It shall be the duty of the county surveyor, upon receiving such notice from the county commissioners, that such a road has been widened, or other improvements authorized, to survey such road, erect stakes or monuments in front of each piece of property, marking the outside lines of such road so widened or extended, and do whatever other work [may be] necessary for said improvement, as ordered by said commissioners. It shall be the duty of said commissioners to assess all claims allowed by them for the establishment and widening of said street or streets upon the property fronting on such road so improved by the foot front. All other expenses for said improvement, except building bridges and culverts, which shall be paid out of the county bridge fund, shall be paid for and assessed upon the property abutting upon said street, not, however, to a greater depth than two hundred and fifty feet, in accordance with the various provisions of law now enacted or hereinafter enacted applicable thereto, and not inconsistent with this act.

"Sec. 7. In order to provide for the payment of the costs and expenses of said improvement to be assessed upon the abutting property, the commissioners may, from time to time, as such improvement progresses, issue the

bonds for such road improvement, in such sums as will be required, in all to an amount not exceeding the contract price of the work and the other expenses attending the same, and interest as hereinafter provided for. Said bond shall be issued as other bonds for road improvement are issued, but they shall bear the name of the street for whose improvement they are issued, and shall state therein that they are to be paid by an assessment upon the property abutting on the said improvement; said bonds shall extend over a period of at least eight years, and for as much longer time as may be provided in the order of said commissioners directing said improvement; they shall bear interest at a rate not exceeding six per cent. per annum, payable semi-annually, on the first day of July and January, principal and interest payable at the office of the county treasurer.

"Sec. 8. The said bonds shall be negotiated at not less than par, as other bonds of said county are negotiated, and the proceeds shall be applied solely to pay for said improvement, and the proceeds thereof shall only be paid upon the certificate of the county surveyor and superintendent hereinafter provided for, that the work has been done according to the contract; when the whole work is done the amount of the bonds sold to pay for the same and the interest thereon to the next interest day, when the assessments can be collected as hereinafter provided to pay the same, shall be taken as the cost of the said improvement to be paid by the abutting property owners, and that amount shall be assessed equally by the foot front of property fronting or abutting on the said improvement.

"Sec. 9. Such assessment shall be placed upon the tax duplicate and shall be payable in equal installments to meet said bonds, provided for in the order of said commissioners, ordering said improvement, at the county treasurer's office, with interest at the rate provided for in said bonds, payable semi-annually, from the date to which such semi-annual interest was computed on the amount of said bonds or so much as remains unpaid from time to time, until all said bonds and interest are fully paid.

"Sec. 10. Such assessment, with interest accruing thereon, shall be a lien on the property abutting upon the street or roads improved from the time the contract is entered into for the making of said improvement, and shall remain a lien until fully paid, having precedence over all other liens, except taxes, and shall not be divested by any judicial sale unless the payment of the same is provided for, from the proceeds of such sale; such lien shall be limited to the depth of two hundred and fifty feet on the lands abutting on said improvement; no mistakes in the description of the property or the names of the owner or owners shall impair the said lien.

"Sec. 11. Any owner of property against whom an assessment shall have been made for such improvement shall have the right to pay the same, or any part yet remaining unpaid in full, with interest thereon, to the next semi-annual payment due on said assessment; such payment shall discharge the lien on the property. If any owner shall subdivide any abutting property after such lien attaches he may discharge the same upon any part thereof in like manner.

"Sec. 12. All moneys received from such assessments shall be appropriated by the proper authorities of the county solely to the payment of the interest and the redemption of the bonds issued for said improvement, or any part thereof. If any bond or interest shall be due and no money is in hand to pay the same, the commissioners shall be authorized to make a temporary loan to pay the same; but such lien shall continue in full force on the abutting property for the full assessments not paid and accruing interest for such temporary loan in behalf of said county.

"Sec. 13. When such order has been made by said commissioners for the improvement of any street under the provision of this act, they shall designate two or more owners of property abutting on said improvement who, with the county surveyor, shall constitute a board which, after the contract for the improvement has been made by the commissioners, may elect a superintendent who shall see that the said contract is performed according to the true intent, and all orders of the county surveyor in furtherance thereof are obeyed. When completed the said superintendent and surveyor shall certify to the same, and shall make a proper plat and assessment for said improve-

ment on the abutting property. The property owners of such board shall serve without compensation, but the superintendent shall be paid such compensation as shall be agreed upon by the board, and such payments shall be a part of the costs of said improvements thereof.

"Sec. 14. In any action to enforce or enjoin any assessment, the court shall disregard any irregularity or defect, whether in the proceedings of the said board or commissioners, or any officer of the county, or in the plans or estimates; and the acceptance of the work by the commissioners upon the certificate of the superintendent or county surveyor shall be presumptive evidence that the contract has been complied with, and the assessment exists, but if it be shown that there are any substantial defects of the improvement, or any fraud in the contract price of the work or material, the court may order such deduction therefor, from the cost of said improvement, and such deduction shall be ratably deducted from the assessment on all the property abutting on said improvement, and the court may make such order in regard to the costs, where such substantial defect or fraud is found, as to the court shall seem proper.

"Sec. 15. The term owner, in this act, shall be construed to include all corporations, private, public, state or municipal.

"Sec. 16. On the completion of the improvement of any road or street under the provisions of this act, the commissioners shall appoint a board of control for said roadway, to consist of three of the property owners of the lands abutting upon said improvement, who shall serve without compensation, and have charge of the repairs and condition of said improved road. Said board shall be appointed to serve two years, or until their successors are duly appointed and qualified. Said commissioners shall fill any vacancy that may occur in said board by an appointment for such unexpired term. Said board shall see that said improved roadway is kept clean and in good repair, and all expenses incurred by said board in such work shall be by them returned to the auditor of the county in a written report of said board, to wit: On the first Tuesday of January, of each year, together with an itemized statement of the expenses incurred by said board, which sum, if deemed correct and proper by said auditor, shall be by him assessed per foot front on all property abutting on said improvement; such assessment, until paid, shall be a lien, as other expenses of making said improved road.

"Sec. 17. In no case shall said commissioners take action for the improvement of any road under the provisions of this act, until after they shall have made a personal inspection and examination of the line of said proposed improvement, and are satisfied that with such improvement the foot frontage of the lands abutting thereon will be well worth double the estimated expenses of such improvement, which inspection, examination, and estimate, together with their present valuation per foot front of said lands, shall be by said commissioners made a matter of record, and no improvements shall be by them ordered, unless said record justifies it. The improvement of all streets under the provisions of this act shall be by said commissioners let to the lowest and best bidder, after two weeks' notice by said commissioners of said letting, published in some newspaper of general circulation in the vicinity of said proposed improvement. The said commissioners shall establish rules for letting of such contracts, which rules shall be printed and posted in the office of said commissioners.

"Sec. 18. This act shall take effect and be in force from and after its passage.

"Passed March 26, 1890."

87 Ohio Laws, pp. 113–118.

The following is a copy of the amendment to the above-recited act, and is found in 89 Ohio Laws, pp. 66, 67.

"An act to amend sections 1 and 5 of an act entitled 'An act to authorize county commissioners in counties in which there are situate cities of the first grade of the second class to improve roads extending from such cities, and other roads or streets in certain cases,' passed March 26, 1890.

"Section 1. Be it enacted by the general assembly of the state of Ohio, that sections one (1) and five (5) of an act entitled 'An act to authorize county

commissioners in counties in which there are situated cities of the first grade of the second class to improve roads extending from such cities, and other roads or streets in certain cases,' passed March 26, 1890, be amended so as to read as follows:

" 'Section 1. That in counties in which there are cities of the first grade of the second class, county commissioners shall have authority to cause any of the streets or avenues, or parts thereof of said cities which may have been paved with granite or other stone block, asphalt or other permanent material to the limit of said city, to be. extended beyond the limits of said cities, and improved by paving as aforesaid, or by improving the same with such materials and in such manner as may be prayed for by the property owners in the petition as provided by section two of this act, or to cause any other road or street within said counties to be so improved upon the following conditions, to wit:'

" 'Sec. 5. Upon the day appointed for said hearing, if no claims for damages or for appropriations have been filed, or if whatever claims have been filed are allowed by the commissioners as hereinafter authorized, the hearing may proceed, and if, upon such hearing, the county commissioners shall be satisfied that the owners of a clear majority of the feet front of land abutting upon said improved roadway favor said improvement, and that the proposed improvements are judicious, it shall be their duty to declare said improvement authorized and established, and to declare the width of said road legalized and established, as of the dimensions and manner as prayed for in said petition, and to make a permanent record of their said action. When said action is taken by the county commissioners they shall immediately notify the county surveyor of their action; said commissioners shall have authority to allow claims as presented or as may have been acted upon. They shall also have authority to sit as arbitrators, and hear all claims arising out of such proposed improvements. They may subpœna witnesses and hear testimony, and upon final hearing shall find and determine the amount, if any fairly due the claimant, or that claimant is entitled to no damages. From such finding and determination of said commissioners, any property owner may appeal to the court of common pleas of said counties upon his filing with said commissioners his written notice of such appeal within five days after such finding and determination, and upon his giving bond, to be fixed by said court, within twenty days after such finding and determination, to pay all costs to be made upon such appeal, in case he does not recover upon such appeal a greater amount than such finding and determination of said commissioners award. him. The award of the jury upon such appeal, including the costs thereof in case such award exceeds that found and determined by said commissioners, otherwise said cost shall be paid by the person taking such appeal, shall by the clerk of said court be certified to said commissioners and by them assessed as provided by section six of this act. Provided, no appeal shall hinder or delay the making of said improvement.'

"Sec. 2. That said sections one (1) and five (5) as passed originally March 26, 1890, be and the same are hereby repealed.

"Sec. 3. This act shall take effect and be in force from and after its passage.

"Passed March 7, 1892."

A. T. Seymour, for plaintiff in error.

Wm. B. Sanders and W. H. Harris, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

In this case counsel have elaborately argued questions as to the authority of the commissioners of Franklin county to levy a general tax for the payment of the bonds sued upon; it being insisted on behalf of the bondholders that, notwithstanding a method of assess-

ment upon the property abutting upon the road is set forth, which may provide a means of ultimate payment as between the county and the property owners, the bonds constitute a general indebtedness of the county, to be collected by general taxation. On the other hand, it is contended that as the bonds, on their face, stipulate that they shall be paid out of the assessments on the property, and, no authority being conferred in the act authorizing the improvement to incur a general liability of the county, the only obligation of the county is to use diligence to collect and to apply the assessments for the benefit of the bondholders. These contentions can be considered now only in so far as they bear upon the authority of the county commissioners to obligate the county, under the powers conferred in the act under consideration, by the issue of the bonds in suit. This case is not one asking the issue of a writ of mandamus either to levy a tax or require assessments as provided in the statute. The present case is a straight action at law, asking a money judgment on the bonds, and no more. It stands confessed by the demurrer, and the answer that the commissioners executed and sold the bonds and received the proceeds thereof. By way of defense, it is urged that the commissioners had no authority to issue the bonds of the county under the terms of this act in such wise as to make any obligation upon the county beyond the collection of the assessments. The commissioners are a quasi corporate body, having the authority to sue and be sued as such, and to enter into contracts and obligations within the scope of their duties duly conferred by law. Rev. St. Ohio, § 845; State v. Commissioners of Hancock Co., 11 Ohio St. 190. It is this quasi corporate body which by the terms of the act is authorized to construct the improvement. The law is entitled:

"To authorize county commissioners in counties in which there are situated cities of the first grade of the second class to improve roads extending from said cities and other roads and streets in certain cases."

While the making of the roadway is to be upon the petition of the abutting landowners, the road is only established when the commissioners deem the same to be a judicious improvement. The commissioners are charged with the duty of seeing to it that, with the proposed improvement, the foot frontage of the abutting lands shall be worth double the estimated expenses of such improvement. The commissioners are to let the contract for the work. These provisions indicate the general purpose to make a county improvement, to be contracted for by the representatives of the county. The improvement was to be paid for by the sale of bonds to raise money for that purpose, and we find it provided in section 7:

"In order to provide for the payment of the costs and expenses of said improvement to be assessed upon the abutting property, the commissioners may, from time to time, as such improvement progresses, issue the bonds for such improvement in such sums as will be required in all to an amount not exceeding the contract price of the work and the expenses attending the same and interest."

The following section (8) provides that the bonds shall be negotiated at not less than par, as other bonds of said county are negotiated, and the proceeds applied solely to pay for said improvement.

We find in section 7 authority to issue "the bonds for such improvement." What bonds are herein referred to? We find no suggestion in the act that they are to be other than the bonds of the county. We are not now considering the power of assessment or taxation to pay the bonds, but solely the question of whose obligations are authorized in the law. To say the bonds must have an obligor is to state a self-evident truth. The county commissioners are not authorized to issue any other. The spirit and letter of this act indicate the intention to authorize the execution and negotiation of these bonds "as other bonds of the county are negotiated." In determining whether the bonds are county obligations, the provisions of section 12 of the act are not to be lost sight of. By the terms of that section, if any bond or interest shall be due, and there is no money to pay the same, the commissioners are authorized to make a temporary loan to pay the same. The lien of the assessment for such temporary loan is to continue for the benefit of the county. Such provisions are generally held to be for the benefit of the holder of the obligation of the corporation which is thus empowered to raise money to meet a legal indebtedness. Supervisors v. U. S., 4 Wall. 435, 18 L. Ed. 419; City of Little Rock v. U. S., 43 C. C. A. 261, 103 Fed. 418; Village of Kent v. U. S., 51 C. C. A. 189, 113 Fed. 232. While we are not now called upon to pass upon the question as to whether the commissioners can be compelled to exercise this authority in favor of bondholders, this feature of the law is entitled to weight, in view of the contention that it was the purpose of the act to impose no obligation upon the county beyond the collection and application of the assessments. It is the county that is here authorized to make loans to meet deficiencies in assessments in order that the bonds may be met at maturity. The commissioners represent the county, and no other political or corporate body. They are authorized to issue the bonds of that quasi corporation whose officers they are. The commissioners exercised this authority, and issued bonds which upon their face purported to be the obligation of the county. It is true that the act requires that, although the bonds shall be issued as other bonds for road improvement are issued, they shall bear the name of the street for whose improvement they are issued, and shall state therein that they are to be paid for by assessments upon the property abutting said improvements; but there is no requirement that they can be only paid for by such assessment, and no express limitation upon the undertaking of the county in issuing and selling these securities. The obligation to pay is unconditional, and there is no statement in the act or in the bond that the holder shall await payment until assessments can be collected. It is not unlikely that the bonds could not have been negotiated, had the act required, and the bonds stated that payment was to be made only from assessments. We do not think anything short of such clear expression of limitation of the right of the bondholder to the assessments on the property, without any general liability on the bonds by the county, will have the effect to thus restrict the obligation of the contract. State v. Fayette Co. Board of Com'rs, 37 Ohio St. 526; U. S. v. Ft. Scott, 99 U. S. 152, 25 L. Ed. 348; U. S. v. Clark

Co., 96 U. S. 211, 24 L. Ed. 628. These obligations upon which the money was received by the county being authorized by the law, and the county having defaulted in payment, a money judgment must be rendered upon the bonds unless some good defense is shown. It is claimed that the act under which the bonds were issued is unconstitutional, as being in contravention of article 26 of the constitution of Ohio, which provides that all laws of a general nature shall have a uniform operation throughout the state. Since the decision in Hixson v. Burson, 54 Ohio St. 470, 43 N. E. 1000, there can be no question as to this law falling within the category of those condemned as attempts to enact special legislation, when general laws having a uniform operation throughout the state can only be passed. Hixson v. Burson expressly overruled the prior decision of the Ohio supreme court in State v. Board of Franklin Co. Com'rs, 35 Ohio St. 459, holding legislation of the character of that now under consideration to be valid. The latter decision was the declared law of the state when these bonds were issued. As late as Wilkes Co. v. Coler, 180 U. S. 506, 21 Sup. Ct. 458, 45 L. Ed. 642, Mr. Justice Harlan, speaking for the supreme court, said:

"It is a settled doctrine in this court that the question arising in a suit in a federal court of the power of a municipal corporation to make negotiable securities is to be determined by the law as judically declared by the highest court of the state when the securities were issued, and that the rights and obligations of parties accruing under such a state of law would not be affected by a different course of judicial decisions subsequently rendered, any more than by subsequent legislation. Loeb v. Trustees, 179 U. S. 472, 21 Sup. Ct. 174, 45 L. Ed. 280, and authorities there cited."

Up to the time of the issue of these bonds, acts similar to the one under consideration had been upheld by the supreme court of Ohio. The fact that the plaintiffs below purchased the bonds after the decision in Hixson v. Burson cannot affect its title as a bona fide holder if the bonds were issued under a law held to be valid at the time of the issue. Gunnison Co. v. E. H. Rollins & Sons, 173 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689.

It is further contended that the bonds are of no validity, as they are issued in violation of the guaranties of the constitution of the United States against taking private property without compensation, and depriving any person of property without due process of law. This argument is aimed against the feature of the law which undertakes to provide for assessments upon the property abutting upon the improvement. A similar question was before the supreme court in Loeb v. Trustees, 179 U. S. 488, 21 Sup. Ct. 174, 45 L. Ed. 280. In that case it was held that, even if the assessment was invalid because of the constitutional objection raised, the law could stand as valid, authorizing the making of obligations of binding force upon the township. Finding in this law authority to issue the bonds for purposes held to be lawful at the time the authority was granted, and the bonds having been issued accordingly, they became the obligations of the county, irrespective of the question—not herein involved —of the validity of any attempted assessments to pay the bonds. As was said by Mr. Justice Harlan in Loeb v. Trustees, supra:

"The relief asked and the only relief that could be granted in the present action is a judgment for money. If the township should refuse to satisfy a judgment rendered against it, and if appropriate proceedings are then instituted to compel it to make an assessment to raise money sufficient to pay the bonds, the question will then arise whether the mode prescribed by the third section of the act of 1893 can be legally pursued, and, if not, whether the laws of the state do not authorize the adoption of some other mode by which the defendant can be compelled to meet the obligations it assumed under the authority of the legislature of the state. All that we can now decide is that, even if the third section of the statute in question be stricken out as invalid, the petition makes a case entitling the plaintiff to a judgment against the township. Whether a judgment, if rendered, could be collected, without further legislation, depends upon considerations that need not now be examined."

What we hold is that the bonds in suit constitute a valid obligation of the county, upon which a judgment may be rendered in favor of the holder. Whether the same can be compelled to be paid through the assessments provided for in the act, or whether there exists legislation under which the commissioners can be required to levy a general tax for the payment of such judgment, are questions not made in this record, and upon which we express no opinion.