REES et al. v. OLMSTED.

(Circuit Court of Appeals, Sixth Circuit. February 7, 1905.)

**1. FEDERAL COURTS—FOLLOWING STATE DECISIONS—VALIDITY OF MUNICIPAL BONDS.**

The federal courts, in determining the validity of a legislative act, under which municipal bonds in suit were issued, under the state Constitution, will follow the construction placed upon the Constitution by the highest court of the state at the time the bonds were issued and sold.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 956.

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

**2. MUNICIPAL BONDS—ROAD IMPROVEMENT—VALIDITY OF OHIO STATUTE.**

Act Ohio March 21, 1894 (91 Ohio Laws, p. 543), which authorized counties of a certain population, on petition of a majority of the landowners in any election precinct, to levy an extra tax thereon, and an issuance of bonds in anticipation of such tax, for improvement of the public roads, was not a law of a general nature within the meaning of Const. Ohio, art. 2, § 26, providing that "all laws of a general nature shall have a uniform operation throughout the state," as such provision was judicially construed by the Supreme Court of the state when such act was passed, and bonds issued thereunder are valid and enforceable, although, subsequent to their issuance, a construction was placed upon the constitutional provision which would render the act invalid.

**3. STATUTES—CONSTITUTIONALITY—ACT CONFERRING CORPORATE POWERS.**

The mere fact that a special legislative act authorizing the appointment by a county board of road commissioners for a district in certain cases declares that such commissioners "shall be a body corporate with the powers and duties hereinafter specified" does not render the act invalid under Const. Ohio, art. 13, § 1, providing that "the General Assembly shall pass no special act conferring corporate powers," as such provision is construed by the Supreme Court of the state, where the powers and duties enumerated are only such as are ordinarily conferred and imposed upon officers or boards charged with the supervision of public improvements.

**4. MUNICIPAL BONDS—ROAD IMPROVEMENTS—ESTOPPEL BY RECITALS.**

Under Act Ohio March 21, 1894 (91 Ohio Laws, p. 543), which authorizes the board of commissioners of a county, on petition therefor, to appoint road commissioners for a district, who shall have power to issue bonds for road improvements, to be attested and registered by the county auditor, and at once reported to the county board, which has general charge of the improvement and the levying of the tax to pay the bonds, with power to remove any of the road commissioners and fill the vacancy, such commissioners, in the issuance of the bonds, as well as in supervising the work done, act simply as agents for the county board, and recitals made by them in the bonds that all things required by the act as conditions precedent to their issuance have been properly done and performed must be regarded as having been made by authority of the county board, and create an estoppel in favor of a bona fide purchaser of the bonds, which precludes a defense thereto on the ground of any irregularity in the action of the board as well as of the road commissioners.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Saltzgaber, Hoke & Osborn, Brown & Geddes, and Chas. A. Schmettau, for plaintiffs in error.

William B. Sanders (Squire, Sanders, & Dempsey, of counsel), for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This action involves the validity of $30,000 of bonds, $10,000 issued on August 14, 1894, and $20,000 on February 15, 1895, the proceeds of which were used for the improvement of the public roads within a precinct of Van Wert county, Ohio, known as "Venedocia Pike No. 1." The suit was brought against the plaintiffs in error, "Commissioners of Venedocia Pike No. 1," by George G. Olmsted, a bona fide purchaser for value of coupons aggregating $2,010. The bonds and coupons were issued under authority of the act of March 21, 1894 (91 Ohio Laws, p. 543), providing for the improvement of public roads in Van Wert county, describing it by population. A demurrer to the petition was overruled on the authority of the Board of Commissioners v. Gardiner's Savings Institution, 119 Fed. 36, 55 C. C. A. 614, decided by this court December 2, 1902, and an answer filed. The defenses relied on were the unconstitutionality of the act, and the irregularity of the action of the county commissioners under it. On the trial, testimony tending to establish the various defenses was excluded, and a verdict for the plaintiff directed, on the grounds, first, that the act was constitutional, and, second, that the recitals in the bonds estopped the defendants from setting up any lack of regularity in their issue.

1. It is urged the act violates section 26 of article 2 of the Constitution of Ohio, which provides that "all laws of a general nature shall have a uniform operation throughout the state." The act provides that upon the petition of a majority of the landowners in any election precinct of a county, residing in the county, the county commissioners, if they deem it advisable, may improve the public roads within such precinct, and for that purpose may levy an extra tax on the property within the precinct; the work of improvement to be done, and the bonds in anticipation of the collection of the tax to be issued, by three road commissioners to be appointed by the county commissioners. The act in terms applies to "any county of this state which, at the last federal census had, or which at any subsequent federal census shall have, a population of not less than 29,050, and not more than 29,800." It may be conceded that the act did not have a uniform operation throughout Ohio, because Van Wert was the only county answering to this description. Field v. Com'rs Highland Co., 36 Ohio St. 476; Ry. Co. v. Martin, Treas., 53 Ohio St. 386, 400, 41 N. E. 690. Was it "a law of a general nature"? This must be determined by the construction placed upon this clause by the Supreme Court of Ohio at the time the act was passed. Board of Commissioners v. Gardiner's Savings Institution, 119 Fed. 36, 47, 55 C. C. A. 614; Loeb v. Trustees, 179 U. S. 472, 491, 21 Sup. Ct. 174, 45 L. Ed. 280; Wilkes Co. v. Coler, 180 U. S. 506, 531, 21 Sup. Ct. 458, 45 L. Ed. 642. The rule then in force was laid down in State ex rel. Hibbs v. Commissioners of Franklin Co., 35 Ohio St. 458, decided at the January term, 1880, in which an act directing the commissioners of Franklin county to levy a special tax

for the improvement of a certain avenue or road was sustained on the ground that the law was not one of a general nature. This continued to be the controlling authority until overruled by Hixson v. Burson, 54 Ohio St. 470, 43 N. E. 1000, decided April 20, 1896, in which an act providing for the improvement of roads in Athens county was held void on the ground that a law regulating road improvements is one of a general nature. The Hibbs Case was expressly overruled. It is suggested that the act involved in the Hibbs Case applied to but one road, and therefore was necessarily local. It may be admitted it was local in its application, but under the decision in the Hixson Case it was of a general nature, because it related to road improvements, and therefore the case which held it valid was overruled. The act in the Hixson Case was also local in its application, being restricted to Athens county, but, being of a general nature, was held invalid. We are satisfied that under this provision of the Constitution, as interpreted in the Hibbs Case, the act under consideration would not have been held unconstitutional. Board of Commissioners v. Gardiner's Savings Institution, 119 Fed. 36, 47, 55 C. C. A. 614.

2. It is also contended that this is a special act conferring corporate powers, in violation of the inhibition of section 1 of article 3 of the Constitution of Ohio. Conceding the act applied only to Van Wert county, and therefore was a special one, did it confer corporate powers? In determining this we must look to its operation and effect. State v. Judges, 21 Ohio St. 11; State v. Hipp, 38 Ohio St. 199. The mere fact that the act declared that the road commissioners who issued the bonds should be a "body corporate" with the powers and duties hereinafter specified," did not definitively determine that the powers conferred were corporate within the meaning of this constitutional provision. We must look to their nature and the object for which they were bestowed. State v. Powers, 38 Ohio St. 54, 61. The question is whether the powers conferred are essentially such as are ordinarily possessed by corporations. It has reference to the intrinsic attributes of the board or body in question, and not to the form or manner in which the powers are exercised. Obviously, the mere name given or declaration made by the Legislature cannot furnish the test. If a special act should declare that the body created by it must not be deemed a corporation, when in fact the act conferred upon it all the attributes and powers of a corporation, it is clear that the declaration would not avail to avoid the inhibition of the Constitution. The converse of this proposition must be equally true. Article 13 regulates corporations, private and municipal. The first section provides that "the General Assembly shall pass no special act conferring corporate powers"; the second, that "corporations may be formed under general laws, but all such laws may from time to time be altered or repealed"; and the sixth, that "the General Assembly shall provide for the organization of cities and incorporated villages by general laws," etc. County and township organizations are regulated by article 10, the seventh section of which provides that "the commissioners of counties, the trustees of townships, and

similar boards, shall have such power of local taxation for police purposes as may be prescribed by law." Corporate powers being those which pertain to a corporation, which denote the existence of a corporation, obviously they may be conferred by either creating a new corporation or enlarging an existing one. Under the decisions of the Supreme Court of Ohio, the well-established rule appears to be that it is only when a law creates a new corporation or confers additional powers upon an existing one that it confers corporate powers within the meaning of section 1 of article 13. Atkinson v. Marietta, etc., R. R. Co., 15 Ohio St. 21; State ex rel. v. Cincinnati, 20 Ohio St. 18, 26; Walker v. Cincinnati, 21 Ohio St. 14, 8 Am. Rep. 24; State ex rel. v. Davis, 23 Ohio St. 434, 443, 444; State ex rel. v. Covington, 29 Ohio St. 102, 111; Neil v. Board of Trustees, 31 Ohio St. 15, 21; State v. Powers, 38 Ohio St. 54, 61; State ex rel. v. Pugh, 43 Ohio St. 98, 110, 1 N. E. 439; State ex rel. v. Smith, 48 Ohio St. 211, 218, 26 N. E. 1069; Commissioners v. State ex rel., 50 Ohio St. 653, 659, 35 N. E. 887; City of Cincinnati v. Trustees of Hospital, 66 Ohio St. 440, 445, 448, 64 N. E. 420; State ex rel. v. Jones, 66 Ohio St. 453, 488, 489, 64 N. E. 424, 90 Am. St. Rep. 592.

It is sought to bring the case within this rule by insisting that the road commissioners who issued the bonds constituted a corporation, because the act itself provided they should be "a body corporate." This mere provision did not constitute them a corporation. We must look to their powers and duties, as drawn from the entire act, to determine whether the General Assembly intended to make them a corporation. Counties, townships, school districts, educational institutions, and the boards in charge of them, are denominated by statute "bodies corporate." But it has repeatedly been held that they do not constitute corporations within the meaning of this provision of the Constitution. At the most, they are but local organizations which for purposes of civil administration are invested with a few functions characteristic of a corporate existence. Board of Commissioners v. Mighels, 7 Ohio St. 109, 116.

In Boalt v. Commissioners of Williams Co., 18 Ohio, 13, 16, the court dismissed a bill in chancery to enforce the satisfaction of a judgment against the county, on the ground that, although the commissioners were capable of suing and being sued, they did not constitute a corporation, but merely represented the county for limited public purposes; that the county, the real defendant, was not a corporation, but a necessary organization for political purposes under the government of the state.

In C., W. & Z. R. R. Co. v. Commissioners of Clinton Co., 1 Ohio St. 77, Judge Ranney thus defined a county (page 89, 1 Ohio St.):

"But what is a county? It is not imperium in imperio, in any sense. It is invested, as such, with no single attribute of sovereignty, and, for reasons already stated, it cannot be. Rightly considered, it is a mere instrumentality, a means in the hands of the legislative power to accomplish its lawful purposes, and to this extent a creature in the hands of its creator, subject to be molded and fashioned as the ever-varying exigencies of the state may require. It would seem to follow that it may from time to time be clothed

with such powers and charged with such duties, of a local administrative character, not vested elsewhere by the Constitution, as the General Assembly may see fit to direct."

In Board of County Commissioners v. Mighels, 7 Ohio St. 109, it was held a suit could not be maintained against county commissioners for injuries resulting from their negligence in constructing or maintaining a courthouse, Judge Brinkerhoff saying (page 116, 7 Ohio St.):

"This statute does not in terms declare or constitute either the county or the board of county commissioners a body corporate proper; * * * neither a county nor the board of county commissioners is a corporation proper; it is at most but a local organization which, for purposes of civil administration, is invested with a few functions characteristic of a corporate existence."

In State ex rel. v. Cincinnati, 20 Ohio St. 18, in which it was held that the inhibition against the granting of corporate powers by special act applies to municipalities, the court took pains to say that township and county organizations should not be included with municipal and other corporations proper, quoting from Board of County Commissioners v. Mighels, 7 Ohio St. 109.

In Beach v. Leahy, 11 Kan. 23, Judge Brewer, construing the provision of the Kansas Constitution forbidding the Legislature to pass any special act conferring corporate powers, held that a school district was not a corporation, although the statutes provided that every school district should be "a body corporate," citing State ex rel. v. Cincinnati, 20 Ohio St. 18, and saying (page 29, 11 Kan.):

"But with reference to counties, townships and school districts, the case is different. True, they are called in the statute bodies corporate. Yet they are denominated in the books and known to the law as quasi corporations, rather than as corporations proper. They possess some corporate functions and attributes, but are primarily political agencies in the administration of civil government, and their corporate functions are granted to enable them more readily to perform their public duties." (Citing cases.)

In State v. Davis, 23 Ohio St. 434, 443, it was held that the board of trustees of the Cincinnati Hospital, although clothed with all the powers to manage the institution, did not constitute a corporation.

In Neil v. Board of Trustees, etc., 31 Ohio St. 15, the board of trustees of the Ohio Agricultural and Mechanical College, the predecessor of the Ohio State University, was held not to be a corporation, the court saying (page 21, 31 Ohio St.):

"It [the act] creates a board of trustees to be appointed by the Governor, * * * and commits to such board the government, control, and general management of the affairs of the institution, and, while the statute authorizes the board to make contracts for the benefit of the college, and to maintain actions, if necessary, to enforce them, and to exercise other powers similar to those conferred on bodies corporate, it does not assume to, nor does it in fact, create or constitute such board of trustees a corporation, and hence does not clothe it with corporate functions or powers.".

In the case of State v. Powers, 38 Ohio St. 54, it was held that common school districts and boards of education are not corporations within the meaning of section 1 of article 13, although it is provided by

statute that such boards shall be "bodies politic and corporate," Judge McIlvaine saying (page 61, 38 Ohio St.) :

"Whether powers conferred by the Legislature upon a common school district be corporate or not, within the meaning of the provision of the Constitution, cannot be determined definitively by the mere fact that such district or its board of education is declared by statute to be a corporation, but rather by the object of its creation and the nature of its functions. The district is organized as a mere agency of the state in maintaining its public schools, and all its functions are of a public nature."

The case of Beach v. Leahy, supra, is cited as "a case exactly in point."

Finally, in the recent case of Thomas v. Board of Trustees of the Ohio State University (decided Nov. 14, 1904) 195 U. S. ——, 25 Sup. Ct. 24, 49 L. Ed. ——, the Supreme Court of the United States, following Neil v. Board of Trustees, etc., 31 Ohio St. 15, 21, held that the board of trustees did not constitute a corporation, saying:

"Thus, upon an issue distinctly made, the Supreme Court of Ohio has adjudged that the defendant board is not, and was not intended to be made, a corporation of the state, but only an agency to manage and control a state institution as the state may direct or provide."

Returning to the case at bar, the act (91 Ohio Laws, pp. 543–546) provides that the road commissioners "shall be a body corporate with the powers and duties hereinafter specified." Section 2. To determine whether they constitute a corporation, we must consider the powers conferred and the duties imposed, for they have no other than those specified. They are appointed by the county commissioners, and are removable for cause. Section 2. They have charge, under the county commissioners, of the road improvements which the act provides the county commissioners shall make (section 1), and determine what roads shall be improved (section 6), issue the bonds (section 7), appoint the superintendents and agents, purchase material, enter into contracts, oversee the work, and issue orders for the payment of certain expenses (section 4). They are given no power to sue except for obstructions or injuries to the improved roads. Section 5. Each road commissioner is to receive $1.50 a day "for every day actually employed," and his reasonable expenses (section 14), and, annually, the board is to report to and make "a full settlement" with the county commissioners (section 12). All of these were powers which might have been exercised by the county commissioners or township trustees, directly, without constituting either a corporation. They did not import corporate existence; they did not make the men who exercised them a corporation. They were none other than the powers and duties ordinarily conferred and imposed upon officers or boards charged with the supervision of public improvements, such as county commissioners, township trustees, school boards, boards of education, trustees of colleges, etc., daily discharge under the statutes, in doing public work, without thereby making themselves corporations. In our opinion, they did not constitute either the road commissioners, or the county commissioners, whose agents they were, a corporation within the meaning of article 13, § 1.

3. The answer admits (in its first defense) that the board of county commissioners, acting under the statute, appointed the defendants below as commissioners of Venedocia Pike No. 1, and that, subsequent to their appointment, the latter issued the bonds, as alleged in the petition, sold them, and that the amount averred in the petition is unpaid. In the fourth defense it is averred that, while the law made it a condition precedent to the action of the county commissioners that a petition be presented signed by a majority of the landowners of the precinct residing within the county, such majority did not sign the petition on which the commissioners acted, and not more than 70 signed out of the total of 160 landowners existing; that the commissioners made no finding that the petition was signed by a majority of the qualified landowners, or that the requested improvement was necessary or conducive to the public convenience or welfare; and that the recital made by the road commissioners in the bonds, "that all acts, conditions and things required to be done precedent to and in the issue of said bonds, had been properly done, happened and performed in regular and due time, and in the manner required by law," was made without authority, and did not operate to estop the making of this defense. We attach no importance to the alleged required finding that the improvement was necessary and conducive to the public convenience and welfare. That the county commissioners so found may be inferred from the fact that they appointed the road commissioners, and proceeded to make the improvement provided in the act. The act itself attaches no importance to this finding, because it provides, in the second section, that "such county commissioners, upon being satisfied that said petition was regular and that proper notice had been given, shall appoint three judicious freeholders of such precinct to be road commissioners," etc., thus ignoring the finding referred to altogether. Under other circumstances, the defense of the irregularity of the petition might be available, but a careful reading of the act has satisfied us that the road commissioners, in issuing the bonds, acted only as the agents of the county commissioners, with their full concurrence, and that the recital may be treated as if made by the county commissioners themselves. The act gave the road commissioners no authority to issue the bonds in any independent capacity. The responsibility of making the improvement was placed upon the county commissioners. Section 1. They were to appoint the road commissioners, and at any time could remove one who proved incompetent, or neglectful of his duties under the act, and supply the vacancy. Section 2. The road commissioners were to supervise the improvement, receiving a fixed sum per day for their services. Sections 4, 14. Whatever they did, they had to report to the county commissioners, and all the proceedings of the county commissioners under the act were to be entered upon their minutes by the county auditor. Sections 12, 2. With respect to the bonds, while they were empowered to issue them, the bonds were to be registered by the county auditor, signed by the road commissioners, and attested by the county auditor, and an immediate report of their issue and sale made to the county commissioners. Section 7. The road commissioners were given no power to levy a tax, but upon the report of

the issue of the bonds the county commissioners were immediately to direct the county auditor to levy the necessary tax, and the funds realized were to be used by the county treasurer and county auditor for the redemption of the bonds and interest. Section 8. Under the Ohio system the county auditor is the secretary of the county commissioners, required to aid them in the performance of their duties, and to keep an accurate record of their proceedings. Rev. St. 1021. All the things required of him under this act were in the line of his duty as secretary of the county commissioners. In this capacity he registered the bonds, attested them, levied the tax, etc. While it is true that a recital made by an unauthorized board or officer is not binding, the rule has no application here. It is conceded the county commissioners appointed the road commissioners, and that the latter issued the bonds, attested by the county auditor, which were sold. This is an admission that the county commissioners appointed the road commissioners for the purpose of issuing the bonds. Having done this, it necessarily follows that they authorized the road commissioners to make the usual recitals required to render the bonds marketable, such as they would have made themselves, namely, that all the things necessary to be done in order to authorize the issue had been done. A purchaser might fairly presume the road commissioners had authority to speak on this point. Certainly, they should have known they were lawfully appointed before they assumed to issue the bonds. At any rate, the county auditor knew, for he was the secretary of the county commissioners, and the act made it his duty to enter the action and finding in question on the minutes of the county commissioners. Section 2. His attestation to the recital made it good. Section 7. As to the county commissioners, if they did not expressly make the recital, they never repudiated, but, on the contrary, acquiesced in and ratified it, for the bonds were not only registered and attested by their secretary, but the issue was reported to them, and the proceeds used for the purposes contemplated by the act. Under the circumstances, justice demands that neither the road commissioners, who issued the bonds, nor the county commissioners, for whom they acted, be permitted to deny their authority to do what they did do, and thus escape the repayment of money obtained on the faith of the regularity of their action, as declared in the recital made to market the bonds. Andes v. Ely, 158 U. S. 312, 324, 15 Sup. Ct. 954, 39 L. Ed. 996; Rondot v. Rogers Township, 99 Fed. 202, 212, 39 C. C. A. 462, and cases cited; City of Defiance v. Schmidt, 59 C. C. A. 159, 165, 166, 123 Fed. 1.

4. The constitutional objections, based upon the provisions of the act for raising the money to make the improvements contemplated, are sufficiently disposed of by what is said in Board of Commissioners v. Gardiner's Savings Institution, 119 Fed. 36, 47, 55 C. C. A. 614, citing and following Loeb v. Trustees, 179 U. S. 488, 490, 21 Sup. Ct. 174, 45 L. Ed. 280.

The judgment is affirmed.