Campbell, Chief Justice,
delivered the opinion of the court:
This is an action to recover an amount the plaintiff was required to pay as taxes which it is alleged were illegally exacted. The facts are stipulated. The plantiff is a corporation engaged in business as a life-insurance company. It *260 filed a tentative return of its income for the year 1921, and in March, 1922, paid a tax under protest. Thereafter, in June, 1922, it filed an amended return, but the collector of internal revenue required it to file a second amended return. Item 6 in the two amended returns is here set forth and shows the difference between the claims of the parties:
(1) 4% of the mean of the reserve funds_$2, 695,279.' 12
(2) Excess of 4% of the mean of the reserve funds over item 5_ 1, 569, 490.86
The question is whether plaintiff can recover the tax of $92,490.20 with the addition of a small item of $5.09 stated in the second amended return, being the amount it was required to pay.
The tax in question is controlled by the revenue act of 1921 (42 Stat. 261), which provides a special method for ascertaining the “taxes on insurance companies.” Section 242 defines the term “life-insurance company,” and section 243 imposes a tax in lieu of taxes imposed by section 230 (the corporation tax) and section 1000 (capital-stock tax) and Title III (war-profits and excess-profits tax). It imposes on a domestic life-insurance company “the same percentage of its net income as is imposed upon other corporations by section 230,” that is, 10 per cent. Section 244 provides that in the case of a life-insurance company the term gross income means the gross amount of income received during the taxable year “from interest, dividends, and rents.” Plainly these specific items are not inclusive of all the sources of income to a life-insurance company, nor are they broad enough to cover “ gains or profits and income derived from any source whatever,” used in section 213 when referring to gross income of individuals — a section that is made applicable to “ gross incomes ” of corporations by section 233. The gross income of the life-insurance company is thus limited to three sources, and the net income, which alone is taxed, is this income from three sources, less certain authorized deductions stated in section 245 (a) under nine separate paragraphs. The deductions authorized by paragraphs (1) and (2) are the material ones in this case and are as follows:
*261 “(1) The amount of interest received during the taxable year which, under paragraph (4) of subdivision (b) of section 213, is exempt from taxation under this title.”
“ (2) An amount equal to the excess, if curvy, over the deduction specified in paragraph (1) of this subdivision, of 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year.”
We italicize certain words in the paragraph for convenience of reference. There is no question as to the mean of the reserve. The amount is stipulated to be $67,381,911.92, 4 per centum of which is $2,695,279.12. The interest exempt from taxation under paragraph (1) is interest on State or municipal bonds and certain Federal securities. It amounted to $1,125,788.26, and in accordance with paragraph (1) was deducted from the gross income as item 5 in both of the amended returns. Including this amount the gross income was $3,824,592.78.
As shown by the two amended returns (item 6), the controversy turns upon the effect to be given paragraph (2) of section 245(a) above quoted. In this paragraph the plaintiff is allowed a deduction which it contends should be 4 per centum of the mean' of its reserve funds, while the Government contends that the deduction is not 4 per centum of these funds but “ an amount equal to the excess ” of 4 per centum of them over the amount of the interest from the tax-free securities. Paragraph (2) certainly, uses the word “excess,” which, according to Webster’s Dictionary, means “ the amount by which one thing or number exceeds another.” The amount of one of these things is ascertained by taking 4 per centum of the mean of the reserve funds (stipulated to be $2,695,279.12) and the other of these things is ascertained by taking the amount of the interest on certain securities (stipulated to be $1,125,788.26). The difference between these amounts shows what excess is authorized to be deducted, and unless the 4 per centum of the reserve is in excess of the other factor, there is no deduction to be made under this paragraph. It is apparent that if the deduction is to be ascertained by recourse to the language used the position of the plaintiff is not tenable. The words used are plain and unambiguous. It further states, however, its fundamental contention to be that in so far as the.act purports to *262 authorize the exaction of the sum in question “ it is repugnant to the Constitution, in that it attempts to tax the income of tax-free securities, and is not referable to any power granted to Congress.” We do not understand the contention to go to the extent, in one phase of the case, of urging as unconstitutional all of paragraph (2). Because if this end be attained and the whole paragraph be stricken down without affecting the others, the result would be that plaintiff would not be entitled to the deduction of item 6 in either of the returns. The argument proceeds upon the theory that the part of the paragraph (that part we have italicized) is void, though effect may be given to the balance of it. This will be adverted to later. It is sufficient here to say that it is urged by plaintiff that interest on tax-free securities being nontaxable, “ it is a breach of the taxpayer’s rights to include in the gross income upon which the tax is based interest on State and municipal bonds.” It is to be conceded that interest on State and certain other bonds is not taxable, but that such interest does actually constitute a part of the gross income of its recipient is a truism. It is not a part of taxable income, and the act does not attempt to tax this interest or “gross income.” It defines “gross income” as something less than the life-insurance company’s actual income, but the tax is imposed upon “ the net income of every life-insurance company” (sec. 243).
This term “ net income ” is defined to mean the gross income, as defined by the statute, less certain authorized deductions, the first of which is the amount of interest received during the taxable year from tax-free securities. So that if this interest is first treated as part of the gross income it is immediately deducted, and if there were no other authorized deductions it is manifest that there could be no basis for a claim that the interest on tax-free securities is taxed. To include this interest in the gross income and then to deduct the amount of it to ascertain the taxable net income produces the same result that would be reached if this interest had not been included in the gross income in the first instance. In neither event is it taxed. But since there are a number of other deductions authorized to be made from the aggregate of “ the interest, dividends and rents ” constituting the gross *263 income, the amount remaining after the tax-free interest is deducted must be kept in view. No objection is taken to the deductions except paragraph (2), the others, which may be designated as miscellaneous deductions, being taken from the “ gross income ” to reach the net. As to the deduction authorized by paragraph (2) it is said by plaintiff that “ it virtually destroys the exemption ” of tax-free securities when held by insurance companies, that it produces a “ glaring discrimination” between life-insurance companies and individuals and between various life-insurance companies themselves.
The contention, it seems to us, confounds what is taxed with what is deducted. As already stated, the tax-free interest being authorized to be and actually deducted, from the gross income there can be no pretense that this element is subjected to a tax imposed on what remains. The principle securing this right of exemption from taxation does not extend to conferring a right to have the exemption counted twice. The paragraph provides a deduction defined to be the amount of the excess of one ascertainable amount over another, and the plaintiff contends that this virtually destroys the value of the deduction of tax-free interest already made because it argues the provision is that the deduction of 4 per centum of the reserves “ to which all life-insurance companies are entitled ” is to be diminished by the amount of this tax-free interest. What basis there is for this statement that all life-insurance companies are entitled to a deduction of 4 per centum of the reserves does not appear. It is not stipulated and we do not find it in the act. Paragraph (2) makes it an element in ascertaining the “excess” that may be deducted from the “gross,” and if a company hasi no tax-free interest to deduct from the 4 per centum it of course secures a larger deduction under this item, than a company having such interest can secure under the same item. But how can that affect the deduction which the owner of the tax-free interest has already taken ? The question resolves itself into whether the act is void because of discrimination. Before considering this let us advert to a contention above suggested that the *264 constitutionality of paragraph (2) could be upheld by striking therefrom the words we have italicized, and thus leave the right to a deduction of 4 per centum of the reverse instead of the “ excess ” mentioned. It is recognized that effect should be given to the legislative intent, and it is not questioned that the intent is primarily to be found in the language of the enactment.
The rule has been thus stated: “As one section of a statute may be repugnant to the Constitution without rendering the whole act void, so one provision of a section may be invalid by reason of its not conforming to the Constitution, while all the other provisions may be subject to no constitutional infirmity. One part may stand, while another will fall, unless the two are so connected or dependent on each other in subject matter, meaning or purpose, that the good can not remain without the bad. The point is * * * whether the provisions are so interdependent that one can not operate without the other.” Loeb v. Township Trustees, 179 U. S. 472, 490. “ But if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other as to warrant a belief that the legislature intended them as a whole, and that if all could not be carried into effect the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected must fall with them.” Allen v. Louisiana, 103 U. S. 80, 84. “The point to be determined,” it is furthext said (p. 84), “in all such cases is whether the unconstitutional provisions are- so connected with the general scope of the law as to make it impossible, if they are stricken out, to give effect to what appears to have been the intent of the legislature.” See Butts v. Merchants Transportation Co., 230 U. S. 126, 138; Supervisors v. Stanley, 105 U. S. 305, 312; Reagan v. Farmers Loan, 154 U. S. 362, 395. Tested by these rules there can be no doubt that the provisions of paragraph (2) are inseparable. Neither can be eliminated and leave a basis for ascertaining the deduction. It can not be said that Congress would have enacted the paragraph with the italicized words deleted. They had the right to author *265 ize a deduction and the courts are without power to make a different one. This brings us to the question of the constitutionality of the entire paragraph (2). As already stated, it is not subject to the objection that it taxes the income from tax-exempt securities. Nor is it subject to the objections that it is void because of supposed discriminations. The class of life-insurance companies coming within the provisions of section 242, to which plaintiff belongs, are all treated alike, so far as they are similarly circumstanced, though an extreme case such as plaintiff uses to illustrate its contention may show that one company may have a deduction of 4 per centum of its mean reserves, while another company may get no deduction under paragraph (2). But if in application, the authorized deduction, in particular instances, may seem to bear upon one life-insurance company more than upon another this is due to differences in their circumstances and not to any uncertainty or want, of generality in the tests applied. See LaBelle Iron Works case, 256 U. S. 377, 393. The established doctrine is that the requirement of uniformity prescribed by the Constitution refers only to geographical uniformity. See Knowlton v. Moore, 178 U. S. 41, 98, 106; Billings case, 232 U. S. 261, 282; Barclay v. Edwards, 267 U. S. 442, 450.
The revenue act of 1918 was attacked in Barclay v. Edwards, 267 U. S. 442, and the revenue act of 1921 in National Paper & Type Co. v. Bowers, 266 U. S. 373, the two cases being heard at the same time because the same question was presented in both. In Barclay v. Edwards it is said: “ The power of Congress in levying taxes is very wide, and where a classification is made of taxpayers that is reasonable, and not merely arbitrary and capricious, the Fifth Amendment can not apply. As this court said, speaking of the taxing power of Congress, in Evans v. Gore, 253 U. S. 245, 256: ‘ It may be applied to every object within its range “in such measure as Congress may determine;” enables that body “to select one calling and omit another, to tax one class of property and to forbear to tax another;” and may be applied in different ways to different objects so long as there is “ geo *266 graphical uniformity” in the duties, imposts and excises imposed.’ ”
The classification of life-insurance companies by the revenue act of 1921 does not furnish a basis for plaintiff’s objection, and the injustice thought to be worked by the act by reason of its operation as between the insurance companies affected “ is an argument, not for the constitutional invalidity of the law before a court, but for its repeal before Congress.” Barclay v. Edwards, supra (p. 451).
That the act in referring to life-insurance companies makes a distinction between them and other corporations and individuals is not to be questioned when their gross income is by section 244 limited to “interest, dividends, and rents.” The income of individuals is from “ whatever source' derived.” Is this a discrimination that strikes down the entire scheme for taxing life-insurance companies ? They are not taxed as other corporations are taxed, but that does not impair the validity of the sections imposing the tax. As already suggested, it would seem that the definition given in section 242 itself limits the number of the companies that are affected by the following sections. The circumstances that one company may have more tax-exempt securities than another company has, or that one company may have none, is not something a court may seize upon to strike down a plan devised for the taxation of the class of life-insurance companies. LaBelle Iron Works, case, supra. The deduction of a percentage of mean reserves must rest in congressional action. It is not a constitutional right or one existing outside of the statute.
An exemption from taxation of the interest arising from State and municipal bonds and tax-exempt Federal bonds is a right which may not be impaired, but when this right is recognized and applied as it is in paragraph (1) the court is powerless to prevent the use of the amount of this interest as an element in measuring the extent of the additional deduction allowed by paragraph (2). We find nothing in the case of Miller v. Milwaukee, decided January 3, 1927, by the Supreme Court, 272 U. S. 713, that militates against our con- *267 elusion. In that case, involving the construction of a State statute, plaintiff’s testator was a stockholder in a Wisconsin corporation that owned tax-exempt bonds of the United States. The interest on these bonds was collected by the corporations and was credited to their surplus. It was subsequently distributed as dividends to the stockholders. The corporations were not taxed for the amount of this interest, it being treated as exempt in the hands of the corporation. The law of Wisconsin provided, however, that, while the stockholders were not taxed upon dividends received from corporations, the income of which was assessed, yet where only part of the income was assessed by the corporation then only a corresponding part of the dividend received therefrom should be deducted from the income taxed to the stockholder. The law was condemned as an attempt to tax' the interest received from Government bonds. But we have no such case. There is not the slightest basis for the claim that the interest on the bonds, State and Federal, is not exempt under the act in question, nor, as has been shown, is it taxed because of paragraph (2). It is urged for the Government that in any event the tax in question is an excise tax. We do not pass upon that question, because, treating it as an income tax, we think the plaintiff must fail. The court has not made a finding requested by plaintiff to be added to the stipulation of facts. This relates to a statement by the “tax adviser of the Treasury Department ” before the Committee on Finance of the Senate when it was considering the tax bill which eventuated in the act of 1921. The full statement of this witness covers several printed pages of the “ hearings before the Committee on Finance ” on H. R. 8245 in September, 1921. We think this document is not material or competent in this case, but it is as available as a public document to another court as it is to this court, and in any event has no place in the court’s findings of ultimate facts.
Our conclusion is that the petition must be dismissed. And it is so ordered;
Moss, Judge; Graham, Judge; Hat, Judge; and Booth, Judge, concur.